## UNITED STATES MORTGAGE Co. *v.* SPERRY and others.

*(Circuit Court, N. D. Illinois.* September 12, 1885.)

1. MORTGAGE—INTEREST COUPONS—INTEREST AFTER MATURITY.

In Illinois a mortgage note or bond bearing interest at a given rate continues to bear that rate of interest so long as the principal remains unpaid.[1]

2. SAME—COUPONS, WHEN DRAW INTEREST—COMMERCIAL PAPER—"WRITTEN INSTRUMENTS"—REV. ST. ILL. CH. 74, § 2.

Coupons given by a guardian for installments of interest on a mortgage on the ward's land that are not so worded as to bind the guardian or the ward personally will not draw interest after they become due as commercial paper or as "written instruments," within the meaning of Rev. St. Ill. *c.* 74, § 2.[2]

## In Equity.

[1] See note at end of case.

[2] The past due coupons of municipal bonds bear interest at the rate fixed by the law of the place where they are made payable. Town of Pana v. Bowler, 2 Sup. Ct. Rep. 704.

*Dexter, Herrick & Allen*, for complainant.

*Lyman Trumbull, J. V. Le Moyne*, and *Henry Crawford*, for defendants.

GRESHAM, J. The first two mortgages, dated July 10, 1872, and April, 1873, to secure loans of $175,000 and $70,000 respectively, were executed by Anson Sperry as guardian of Henry W. Kingsbury. The money was borrowed to enable him to rebuild on his ward's real estate, and to pay off incumbrances thereon. Heman G. Powers, as guardian, executed a third mortgage on December 1, 1876, to secure a loan of $95,000. This amount was needed to pay off overdue interest on the preceding mortgages, and an indebtedness incurred by the former guardian in rebuilding. Default having been made in the payment of interest coupons attached to each of the mortgages, the Mortgage company on November 2, 1877, exercised the right given it by the terms of the mortgages of declaring the principal sums due, and a few days thereafter filed its bill to foreclose.

John V. Le Moyne, who at this time had succeeded Powers as guardian, filed an answer averring that the county court had no jurisdiction to authorize the execution of the mortgages for the purposes specified, and denying their validity. The minor became of age December 23, 1883, and in May, 1885, filed his answer, which, in addition to the averments contained in Le Moyne's answer, alleged that the rate of interest contracted for was unauthorized by the charter of the Mortgage company, and that the mortgages were invalid for that reason. The mortgages were decreed to be valid on the tenth day of September last, and the amount due the complainant remains to be determined. (24 Fed. Rep. 838.) The bonds which the three mortgages were executed to secure all drew 9 per cent. interest, with coupons annexed, and in his application to the court for authority to make the third loan and execute a mortgage to secure it, Powers stated the amount of interest due from his ward at the rate of 9 per cent. upon the first two mortgages, and at the same rate on all past due coupons. On this basis $53,194.27 of the third loan of $95,000 represented interest.

It is contended for the defendants that when the principal sums became due at the election of the Mortgage company the contract provided no rate of interest, and that thereafter the loans drew the rate allowed by the statute, viz., 6 per cent. It was held in *Ohio* v. *Frank*, 103 U. S. 697, that the creditor was entitled to the contract rate up to the maturity of the debt, and thereafter the statutory rate, unless a different local rule had been established. It was also held in the same case that a different local rule had been established in Illinois by the supreme court of that state in *Phinney* v. *Baldwin*, 16 Ill. 108, in which it was decided that a note given for a sum of money, bearing interest at a given rate, continued to bear that rate as long as the principal remained unpaid. The rate of interest, therefore, on the

three loans remained unchanged when the principal sums became due by the election of the Mortgage company.

One of the coupons (all being alike except as to number) reads as follows:

"Due the United States' Mortgage Company $3,150 on the first day of October, A. D. 1873, in gold coin of the United States, payable at such place in the city of Chicago, in the state of Illinois, as the said United States Mortgage Company, their successors, legal representatives, or assigns, shall in writing from time to time appoint, and, in default of such appointment, then at the agency of said company in the said city of Chicago, being for the payment of an installment of interest due on that day on my bond to the said United States Mortgage Company of this date. Conditioned for the payment in gold coin of the United States of $70,000, with semi-annual interest at 9 per centum per annum on the whole sum from time to time remaining unpaid in gold coin of the United States, said bond being made to secure a loan made to me in like gold coin. Said payments are to be made in gold coin of the quality and fineness of the present standard of the United States.

"ANSON SPERRY,
"Guardian of the estate of Henry W. Kingsbury."

While it is true that a promise in advance in a note or other instrument to pay compound interest will not be enforced, still coupons given by an individual or a corporation for installments of interest to mature on bonds draw interest. This, however, is upon the theory that such coupons are separate instruments, promises to pay to bearer specified sums of money at specified times, and when severed from the bonds to which they are attached possess all the essential qualities of commercial paper. *Gelpcke* v. *Dubuque*, 1 Wall. 206; *Thomson* v. *Lee Co.*, 3 Wall. 331; *Aurora* v. *West*, 7 Wall. 105; *Clark* v. *Iowa City*, 20 Wall. 583. But these coupons are only such in form. They bind neither the guardian nor the ward personally; in fact they bind no one personally. The bonds and coupons are made a charge upon the ward's real estate, and the holders cannot maintain personal actions on them; their only remedy is in equity to enforce the charge or lien. It is expressly provided in the bonds, the mortgages, and the orders of the court authorizing the guardians to make the loans, that they are not to be personally liable, and if the incumbered real estate proves to be an insufficient security the Mortgage company will have no remedy against the guardians or Kingsbury for the deficiency. It is not pretended that the Mortgage company took the bonds or coupons supposing the guardians were personally liable. The coupons, so-called, are not commercial paper, and they do not draw interest.

Section 2, *c.* 74, Ill. Rev. St., provides that creditors shall be allowed interest at the rate of 6 per centum per annum on all moneys after they become due on any bond, bill, promissory note, or other instrument in writing. It is claimed that under this statute the coupons are "instruments in writing," and drew interest at the rate of 6 per cent. per annum after they became due. Courts of equity look to the substance and not to the mere form of transactions; and we

have already seen that neither the bonds nor the coupons created any personal liability. The three loans, evidenced as they are by the bonds, coupons, mortgages, and orders of the court, have no other or greater effect than if the county court had authorized the guardian to procure the money to rebuild, charging the ward's real estate with its repayment with interest at 9 per cent., payable semi-annually, and the loans had been made under such authority. At the time the third loan was made, the Mortgage company claimed that there was due it for interest on the principal of the first and second loans and interest on past due coupons, both at the rate of 9 per cent. per annum, $53,194.27. Powers, the guardian, at this time was a member of the Mortgage company's loan committee at Chicago, thus occupying inconsistent relations; and in his petition to the county court for authority to make the third mortgage, he admitted the correctness of this claim. While it was clear that if there was any foundation at all for interest on the past due coupons the rate should not have exceeded the statute rate of 6 per cent., the guardian seemed more mindful of his duty to the Mortgage company than to his ward, and allowed and paid 9 per cent. It is true this was claimed and allowed as interest on interest, and not as interest on the principal sums, but the excess over 6 per cent. was obviously unjust and illegal. Usury consists in the contracting for, receiving, or reserving a greater rate of interest on the principal sum than is allowed by law; while compound interest is the addition of the accruing interest to the principal, and the taking of interest on this interest. Courts decline to enforce contracts providing in advance for compound interest, not, however, because they are usurious, but on the ground that they tend to oppress the debtor, and are against public policy. Money once paid, however, for compound interest cannot be recovered back; and a note given for the payment of interest on past due interest is valid, and can be enforced. *Kellogg* v. *Hickok*, 1 Wend. 521; *Stewart* v. *Petree*, 55 N. Y. 621; *Camp* v. *Bates*, 11 Conn. 487; *Wilcox* v. *Howland*, 23 Pick. 167; *Mowry* v. *Bishop*, 5 Paige, 98; *Otis* v. *Lindsey*, 10 Me. 315; *Mosher* v. *Chapin*, 12 Wis. 453.

It is not to be presumed that a court, whose peculiar province it is to protect persons of tender years, would charge an infant's estate with compound interest. It was the order of the county court that gave effect to the contracts, and bound the infant's estate. It is true that the interest on the principal sums became due semi-annually, and that instruments in the form of coupons were attached to the bonds; but this of itself was not sufficient to show that the court intended to charge the estate with interest on the interest installments. It is plain that the Mortgage company demanded and received out of the $95,000 loan more than was due it as interest on the first and second loans, but it is claimed by counsel for the company that so far as the third mortgage related to interest, it was an agreement to pay the past due interest on the principal of the first and second mort-

gages, and interest on interest installments from the time they severally became due. It is a sufficient answer to this to say that it does not appear from the record that the county court authorized or assumed to authorize the guardian to pay compound interest on the first and second loans.

The third loan embraced compound interest on the first and second loans, and more. The excess over 6 per cent., we have already seen, can be justified on no theory. If the exaction of this excess did not constitute usury, it was because the parties thought 9 per cent. was allowable, and they did not contemplate usury. However this may have been, the court is at liberty to award such relief under the third mortgage as will be equitable. The guardian in his answer denied the validity of the mortgages, and after attaining his majority, Kingsbury filed an answer in which he denied their validity, and endeavored to avoid payment of both principal and interest, although he had received the benefit of the Mortgage company's money. The mortgage company has been obliged to conduct a protracted and expensive litigation. If it had promptly enforced its remedy, the property charged would have been sold when its value was depressed, and for not more than the amount due on the three loans. Fortunately the premises will now sell for a sum largely in excess of the incumbrance. This is an admitted fact. The defendant should, therefore, be required to pay the Mortgage company a reasonable compensation for the use of its money.

Interest will be allowed on the principal sums at 9 per cent., until the ———— of November, 1877, when Mr. Le Moyne was appointed guardian, and thereafter on the third loan at a rate which will be equivalent to $6\frac{1}{2}$ per cent. on all the loans from the last named date.

### NOTE.

In Kellog v. Lavender, (Neb.) 18 N. W. Rep. 38, notes were given payable in one and two years, with 12 per cent. interest, payable annually, and the court held that the holders thereof were entitled to the rate provided for, after as well as before maturity. The court say: "This view seems to be in accord with the recent decisions of the English courts, as collected by Chief Justice GRAY, in his very able and exhaustive opinion in the case of Union Institution for Savings v. City of Boston, 129 Mass. 82. In this case the learned judge cites all the cases, American and English, and reaches the same conclusion as that announced by Mr. Justice FIELD in Cromwell v. County of Sac, 96 U. S. 51, that 'the preponderance of opinion is in favor of the doctrine that the stipulated rate of interest attends the contract until it is merged in the judgment.' But the best-reasoned case, it seems to me, is that of Spencer v. Maxfield, 16 Wis. 178. The opinion of the court by Mr. Justice PAINE answers every objection, and leaves it perfectly clear to my mind that the rule as last stated is the correct one, and that none other ought to be adopted in this state."

Where a promissory note by its terms fixes a legal rate of interest per annum, "from date until paid," such note will draw interest at the agreed rate after as well as before maturity, and the judgment or decree rendered thereon will draw the same rate of interest. Bond v. Dolby, (Neb.) 23 N. W. Rep. 351.

A promissory note, or other obligation containing an agreement for a special rate of interest, will, after maturity, draw interest only at the statutory rate unless the special rate is expressly agreed to be paid after maturity. Eaton v. Boissonnault, 67 Me. 540.

Where there is a uniform rate of interest, and a conventional rate fixed by statute, a contract in writing to pay a debt, with interest at a given rate from a designated date, carries the conventional rate as well after as before maturity. Overton v. Bolton, 9 Heisk. 762.

A note payable one day after date, and bearing a conventional rate of interest greater than the legal rate, but containing no provision for the rate of interest after maturity, draws the same rate of interest after as before maturity. Shaw v. Rigby, 84 Ind. 375.

A promissory note payable within a year from its date, with a larger than the statutory rate of interest, "per annum, from date," draws only the statutory rate of interest after maturity. Newton v. Kennerly, 31 Ark. 626.

A contract to pay a sum certain at a future day, with interest at a conventional rate, nothing being said as to the rate of interest after the principal sum becomes due, bears interest at the conventional rate until it becomes due, and from that time, upon the aggregate of principal and interest, at the legal rate. Briggs v. Winsmith, 10 S. C. 133.

In an action upon a contract to pay a sum of money at a certain time, with interest at a specified rate, the creditor is entitled to recover interest at that rate, not merely until the agreed time for payment of the principal, but until it is actually paid or his claim for principal and interest is judicially determined. Union Institution for Savings v. City of Boston, 129 Mass. 82.

A contract to pay interest at a specified rate, but silent as to the rate after maturity, draws the conventional rate after maturity. Meaders v. Gray, 60 Miss. 400.

A note payable one day after date, at a conventional rate of interest, bears that interest until paid. Casteel v. Walker, 40 Ark. 117.

A sealed note, payable 12 months after date, "with interest at 12½ per cent. per annum, interest payable annually," and described in a contemporaneous mortgage executed to secure it as a note, "with interest thereon at the rate of 12½ per cent. per annum till paid," draws the same rate of interest after maturity as before. Mobley v. Davega, 16 S. C. 73.

A sealed promissory note, payable six months from date, with interest at the rate of 12 per cent. from date, bears the conventional rate of interest until paid, although not paid at maturity. Cecil v. Hicks, 29 Grat. 1.

Where a note is payable on demand, with interest at 10 per cent., that rate of interest is recoverable up to the date of the judgment. Paine v. Caswell, 68 Me. 80.