Starne v. Farr.

## CHARLES A. STARNE ET AL.

v.

## ALGERNON FARR.

| 17 | 491 |
| 101 | 3478 |

1. PARTIES—NON-JOINDER.—The mere non-joinder of a party who might be a proper party because having a formal or nominal interest in the litigation, will constitute no fatal objection at the hearing, or rehearing, or on a bill of review, if a decree can be made in his absence without prejudice to the parties before the court.

2. INTEREST—RATE AFTER MATURITY.—In case of a bond with interest coupons at an agreed rate, greater than six per cent., upon default made, and foreclosure proceedings, the interest should be computed at the agreed rate to the time of the decree.

3. DEFAULT—PROOFS.—When there is a default and decree *pro confesso* it can not be assigned for error that the proofs do not sustain the allegations of the bill.

ERROR to the Circuit Court of Sangamon county; the Hon.

J. J. Phillips, Judge, presiding.    Opinion filed December 4, 1885.

Messrs. Patton & Hamilton and Messrs. Matheny & Matheny, for plaintiffs in error; as to parties, cited Harris v. Cornell, 80 Ill. 54; Moore v. Munn, 69 Ill. 591; McGraw v. Bayard, 96 Ill. 146; Walsh v. Truesdell, 1 Bradwell, 126; Fresh v. Million, 9 Mo. 315; Harvey v. Thornton, 14 Ill. 217; 1 Perry on Trusts, §§ 343–4, 3d Ed; Cross v. Carey, 25 Ill. 564; Hopkins v. Roseclare Lead Co., 72 Ill. 373; Story's Eq. Pl. § 236; Zelle v. Workingmen's Bk. Co., 10 Bradwell, 334.

Mr. N. M. Broadwell, for defendant in error; as to parties, cited 2 Washburn on Real Property, 478; Story's Eq. Jurisprudence, § 1061; Walridge v. Bank, 1 Sneed, 297; Goss v. Singleton, 2 Head, 67; Gibbs v. Marsh, 2 Met. 243.

Wall, P. J.   This was a bill in chancery filed by defendant in error against the plaintiffs in error to foreclose a deed of trust.   It is alleged that on the 1st of January, 1879, Charles A. Starne, one of the plaintiffs in error, executed twenty bonds of $500 each, payable to bearer five years after date, bearing interest at the rate of ten per cent. per annum, and that to secure the said bonds he executed the deed of trust in question to Charles R. Hurst as trustee.   The bill avers that the complainant was the owner and holder of said bonds; that by the terms of the deed it became the duty of the trustee to sell the property on default of the grantor in the payment of the debt and apply the proceeds to that purpose, and in case of the death of the trustee the duty should devolve upon the master in chancery of Sangamon county, wherein the property is situated; that the debt is due and unpaid; that the trustee named is dead; that the master in chancery declines to execute the trust; that the Sangamon Coal Mining Company claims an interest in the property acquired since the making of the deed of trust; makes said company and said Starne defendants and prays for an accounting and sale of the property, the proceeds to be ap-

plied to the payment of the amount found due on said bonds and the costs of the proceeding. Process was duly served, the defendants were ruled to answer, a default was entered, the bill taken *pro confesso*, and the cause referred to the master to take proofs and make report.

The master reported that he had taken proofs; that there was due the complainant $10,869.34; that by the provisions of the deed of trust there was to be taxed for the complainant a reasonable sum for an attorney's fee in case of foreclosure, which he had upon evidence fixed at $300; that the allegations of the bill were true and that complainant was entitled to a decree of foreclosure as therein prayed for the above amount. He also reported the proofs upon which his conclusions were based. A decree was then entered requiring the defendant Starne to pay said debt and cost within twenty days, and in default that the master in chancery sell the property upon the usual notice, and subject to redemption as provided by statute in the case of an ordinary mortgage of real estate. At a subsequent day of the same term of court the master reported that he had sold the property to the complainant for the amount of debt, interest, and cost, which report was by the court approved.

At a still later day of the same term the defendants filed their motion to set aside the decree and for leave to answer the bill, which the court upon due consideration refused, and the record having been brought here several alleged errors are assigned, presenting the points upon which our decision is required.

First, as to the refusal of the court to vacate the decree and permit the defendants to answer. In this we think there was no error. Assuming that the matters set up in the answer which defendants offered to file constituted a defense to any part of the decree, there was no such diligence manifested by the defendants as would entitle them to the relief sought.

The application was addressed to the discretion of the court, and it was necessary that some good reason for not making answer within the time set by the rule should be shown, before the court would regard the alleged ground of defense. It

can not be said that there were any circumstances to excuse the defendants. They had counsel employed who examined the bill and there was ample time and opportunity. If we should hold, upon the facts here presented, that the court abused its discretion, and that the defendants had a right to be let in to make their defense when this motion was entered, then it would hardly be worth while for courts to establish rules governing the order of proceedings before them. There was such want of diligence in this respect that we think the court was entirely justified in refusing to set aside the default, and we pass to the point we shall next notice, which is that the bill omits proper and necessary parties defendant. It is urged that the heirs of Hurst, the trustee, or his successor in trust. the master in chancery, should have been made parties to the bill. The deed of trust conveys the property in question, a leasehold, to said Chas. R. Hurst, "his heirs and assignees, and to his successor and successors in trust," with power to take possession of the property and sell the same, applying the proceeds to the payment of the debt. This expression, "his heirs and assignees, and to his successor and successors in trust," occurs several times in the body of the deed, and appears to have been used without very much reference to the legal effect of the terms employed, and, as will be seen upon analysis, was not well considered. But the concluding paragraph of the deed reads as follows :

"And further, that in case of the death, resignation, removal from the said county of Sangamon, or other inability to act of said party of the second part, then the master in chancery of said county shall be and hereby is appointed and made successor in trust herein, with like power to act as is herein vested in said party of the second part."

Construing the whole instrument, it seems clear that it was intended to confer authority to execute the trust in question—personal in its nature as it is—upon the said Hurst, or, in case of his death, etc., upon the master in chancery, and that it was not designed that the heirs of said Hurst, or his assigns, who were unknown, and who might have been quite incompetent for the purpose, should be permitted to carry out this

important trust, involving a large sum of money; and that in view of the final clause in the deed, the court is justified in disregarding all preceding and contradictory expressions upon this point.

We adopt this construction, and, holding thus, the question arises whether the bill and decree are defective because the master in chancery was not made a formal party to the suit. It is alleged in the bill that the master had refused to make the sale in pursuance of the authority so conferred, and the object of the bill was to obtain a decree for sale, which, by the usual and invariable practice of the court, would be executed by that official, unless he was, by reason of interest or otherwise, disqualified to act; and such was the decree.   So that whether made a formal party or not, the master was required to do that which he had power under the deed, but, for some reason not given, he had declined to do.   He is the officer of the court—the arm by which its power is exercised and its mandate enforced.

It is true that as a general rule in suits concerning trust property by or against the *cestuis que trust* the trustees are necessary parties (Story's Eq. Pl., Sec. 207) ; and usually all persons having a material interest in the subject-matter or in the object of the suit ought to be made parties.   Yet, as stated by the same writer, the rule does not seem to be founded upon any positive and uniform principle, and does not admit of being expounded by the application of any universal theorem as a test.   It is a rule founded partly in artificial reasoning, partly in considerations of convenience, partly in the solicitude of courts to suppress multifarious litigation, and partly in the dictate of natural justice, that the rights of parties ought not to be affected in any suit without giving them an opportunity to defend, (Ibid. 46 c,) and therefore it is true that the mere non-joinder of a party who might be a proper party, because having a formal or nominal interest in the litigation, will constitute no fatal objection at the hearing or rehearing, or on a bill of review if a decree can be made in his absence without prejudice to the parties before the court.   If entire justice can be done

without him the objection will not avail. Ibid. 75, 229. In the case before us the master in chancery was vested by the deed of trust with a power of sale, and as the successor in trust of Hurst, had a formal interest in the subject-matter, but it was for a certain specified purpose only. He had refused to act under that authority as was alleged in the bill and admitted by the default, and if this was so the beneficiary might well invoke the aid of the court. Had the master been made a formal party to the suit, the most that could have been done with him was to compel him to execute the trust just as was done by the decree, so that this object has been accomplished; therefore full and complete justice in this respect has been done as between the parties before the court, and if there is no danger of further litigation or other mischievous consequence growing out of the omission, there is no occasion to set aside the decree on this ground.

Who can complain hereafter? Not the present parties certainly, and it would seem equally impossible that the master could ever assert any right or interest in the subject-matter. His power and interest have been exhausted. By the order of the court, made in part upon his own report that he had found the allegations of the bill to be true, he has done all that he could voluntarily have done, and it would be sacrificing sense to sound now to say that he was an indispensable party, and that the decree must be reversed for this cause.

It is urged also that the decree is on its face manifestly too large. The amount is made up by computing interest at the rate fixed by the parties, ten per cent., up to the date of the decree. The plaintiffs in error insist that by the terms of the bond this rate of interest continues only up to the maturity of the debt and from that time forward but six per cent. should be allowed. The difference between these two modes of calculation is about $344.

There is some conflict in the adjudications upon this question. In the very similar case of a promissory note payable on or before a day named with a rate of interest greater than six per cent. it is held in this State that the conventional rate continues up to the time judgment is entered; this upon the

reasoning that such was the intention of the parties, and therefore the contract must be so construed. Phinney v. Baldwin, 16 Ill. 108 ; Etnyre v. McDaniel, 28 Ill. 201.

The Supreme Court of the United States in Brewster v. Wakefield, 22 Howard, 118, took the opposite view of such a rate in a case before that court, but in the case of Ohio v. Frank, 13 Otto, 697, which was an action upon a bond with interest coupons, like the present case, originating in this State and to be governed in the construction of the contract in this respect by the adjudications of this State, it was held that upon the principle announced in and under the authority of the Illinois decisions, *supra*, the contract rate of interest would continue up to the judgment. So also in the case of Pruyn v. Milwaukee, 18 Wis. 367, there was a similar conclusion in a suit upon a bond with interest coupons.

We are of opinion there is no error in the decree in this respect.

The remaining point is that the decree is too broad and covers more property than is warranted by the bill. As already stated the property included in the deed of trust is a leasehold, and the instrument, as alleged in the bill, conveyed to the trustee all the interest, right and title of the said Starne, in the premises described, by virtue of a certain lease made to him by Farr and wife, recorded in book, etc., including all the buildings and improvements on and of said land, together with all engines, machinery, fixtures, apparatus and apparel placed on said lands or any part thereof, for use in the mining of coal and trade therein.

The decree follows this allegation of the bill in describing the property, and it is urged by the plaintiffs in error that so far as it covers the engines, machinery, fixtures and apparatus placed on the land or any part thereof, for use in mining coal or trade therein, it is without warrant.

It is a general rule that where there is a default and decree *pro confesso* it can not be assigned for error that the proofs do not sustain the allegations of the bill, and while the court may, in its discretion, hear testimony on all or any part of the bill, it is not necessary to do so. Sec. 18, Ch. 22, R. S.; Manches-

ter v. McKee, 4 Gil. 511 ; Harmon v. Campbell, 30 Ill. 25 ; Boston v. Nichols, 47 Ill. 351.

As was said in Manchester v. McKee, *supra:* "If it would not be error to make a decree without any proof, it is not easy to comprehend where the error is, in rendering a decree upon insufficient proof." Counsel argue, however, that the deed of trust is made an exhibit to the bill, and that if the allegation of the bill is broader than justified by the deed, the bill must yield.

The deed of trust, after describing the land upon which the lease was given, contains this provision : " meaning and intending hereby to convey to said party of the second part, in trust for the purpose aforesaid, *all interest the party of the first part has in the premises aforesaid, including the buildings and improvements of every kind placed thereon by the said party of the first part.*" It is contended that the terms " buildings and improvements " do not embrace engines, fixtures, machinery and apparatus placed on the land in mining coal. It will be noticed that the grantor conveys *all his interest* in the land, and it is a rule of law that all additions of a permanent nature placed on the land by a mortgagor for the purpose of carrying on the business for which the property is designed and used, become fixtures in the general sense of the term, and will pass with the estate under the foreclosure (Wood v. Whelen, 93 Ill. 153; 2 Kent. Com. *345); and were the words "buildings and improvements of every kind " omitted, the additions to the realty specified in the bill and decree would probably pass, as between the parties to this deed of trust, to the purchaser under the foreclosure. These terms, when used with reference to the business of mining coal, for which it appears the lease was made, are general enough to include the fixtures named. In the case of French v. Mayor, etc., 16 Howard Pr. N. Y. 220, the court remarked that the term "improvements" is most comprehensive, and it would be difficult to say what it does not include. West v. Blakeway, 2 Man. & Gr. 729. We think there is no error in this respect. The decree of the circuit court is affirmed.

Affirmed.