**In re LORRAINE CASTLE APARTMENTS BLDG. CORPORATION, Inc.**

**BART v. CASTELLANI et al.**

No. 9130.

Circuit Court of Appeals, Seventh Circuit.

Nov. 19, 1946.

Wm. H. Rubin, of Chicago, Ill., for appellants.

Ross Langdon, Charles O. Loucks, and John J. Yowell, all of Chicago, Ill., for appellee.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Our opinion in Re Lorraine Castle Apartments Building Corporation, 7 Cir., 149 F.2d 55, contains a statement of many of the facts involved in this appeal. This court having in that case affirmed the order approving the plan for reorganization, D.C., 53 F.Supp. 994, the cause went back to the District Court for completion of the reorganization including adjudication of amounts due the various claimants and confirmation of the plan. Thereupon the debtor petitioned the court to determine the rate of interest which the debtor should pay on its obligations during pendency of the proceedings. This petition was referred to a special master, who, after hearing evidence, recommended that the claimant be allowed, in addition to the principal, 5 per cent interest from May 1, 1942 until final distribution. Appellant, holding a substantial amount of bonds, appeals, claiming that the court should have allowed 7 per cent interest after May 1, 1942, and that, inasmuch as such was the provision in the original bonds and this court had directed no modification of such provision, the doctrine of res adjudicata compelled allowance of 7 per cent.

■■ The bonds, payable May 1, 1935, were executed by two individuals and provided for interest at 6 per cent until maturity and 7 per cent thereafter. Shortly after their issue, the property was conveyed to the debtor whose first contract liability to the bondholders arose out of a voluntary extension agreement executed May 1, 1933, whereby the interest was reduced to 4 per cent which debtor agreed to pay. The debtor finding itself unable to meet its obligations under this agreement, 77B proceedings were instituted and a plan of reorganization approved in accord with the provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The plan, confirmed on July 22, 1935, granted the debtor seven years extension from May 1, 1935. The plan's only reference to interest was a provision that interest should be waived during the first year and that thereafter the bonds would "bear interest at the rate of 3 per cent per annum." New coupons were to be executed for the reduced interest and each bond was stamped with a legend that it was extended so as to become payable May 1, 1942 and bear interest at the rate of 3 per cent per annum payable semi-annually. The plan became effective by final decree of the District Court in the 77B proceedings. This decree discharged the debtor corporation from all liabilities other than those provided for in the plan and, under Sections 224 (1) and 228 of the Bankruptcy Act, 11 U.S. C.A. §§ 624(1), 628, was binding at all times thereafter upon the debtor and its creditors and stockholders. The decree established forever after the rights and liabilities of the respective parties, regardless of what had been the terms of the original contract. Thereafter the bondholders could not rightfully demand what they might have originally been entitled to. They could only demand what they had been given under the completed plan of reorganization.

■ When, in the later proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., the special master reported upon the petition referred to him for determination of the rate of interest, he properly found that the plan approved in the earlier 77B proceedings was the yardstick of debtor's obligations and, further, that inasmuch as that plan made no express provision for interest after maturity, the bondholders should be allowed such interest as was equitable. Strictly speaking, we are of the opinion that, in the absence of a provision to the contrary, the plan, effective as a contract between the parties, fixing 3 per cent justified allowance only of that amount. But the District Court approved the master's report and allowed 5 per cent interest and no cross appeal has been perfected. Consequently we think we are without jurisdiction to reduce the rate below 5 per cent.

■ The rate of interest after maturity upon real estate obligations which make no express provision as to it is fixed by the laws of the state where the property is located. Town of Ohio v. Frank, 103 U.S. 697, 26 L.Ed. 531. In Illinois a negotiable instrument which bears a specific rate of interest but contains no provision as to any different rate after maturity continues to bear the specified rate after maturity until

paid. Phinney v. Baldwin, 16 Ill. 108, 61 Am.Dec. 62; Etnyre v. McDaniel, 28 Ill. 201; Starne v. Farr, 17 Ill.App. 491; United States Mortgage Co. v. Sperry, C.C., 26 F. 727; Hicks v. Elwell, 129 Ill.App. 561. Correctly applied these decisions would have justified the District Court in limiting the rate to 3 per cent.

Appellants insist, however, that the earlier decision of the District Court, affirmed upon appeal by this court in 149 F. 2d 55, constituted an adjudication that the interest rate should be 7 per cent. But the question of interest was not presented there, for the order on appeal did not fix the amounts of claims or the rates of interest on claims. That was a question for the court to determine upon an order allowing and fixing the amounts of claims at the time of or prior to confirmation of the plan. Consequently it was entirely proper for the District Court to determine the matter when it was properly presented to it. We made no adjudication of the issue. It was not raised on the face of the record. Inasmuch as the order was merely interlocutory in character and neither the District Court nor this court decided the question, there is no reason in law or equity why the power of the court to fix the amount of the claims and the rate of interest thereon should be held to have been limited by our decision.

The order is affirmed.