# Richmond

## WELLINGTON, SEARS AND COMPANY v. WILLIAM C. KING AND JOHN G. KING.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Baird, White & Lanning,* for the plaintiff in error.

*James H. Corbitt,* for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

Wellington, Sears and Company filed a notice of motion in the circuit court against William C. and John G. King, to recover the sum of $1,556.04, due, as alleged, by reason of a certain written guarantee executed by them to indemnify plaintiffs for goods and merchandise sold the King Overall Company. The case was tried by the court and judgment rendered in favor of the defendants.

Plaintiffs are New York merchants and King Overall Company is a Virginia corporation engaged in the manufacture of overalls in the city of Suffolk. For a period of years plaintiffs had been furnishing raw material to the overall company. The credit of the company became unsatisfactory and plaintiffs demanded security before making further shipments. At the time of this demand the company

was heavily indebted to the plaintiffs. On January 10, 1929, the defendants, officers and stockholders of the King Overall Company entered into this agreement:

*"January 10, 1929.*
"MESSRS. WELLINGTON, SEARS & CO.,
　　*"65 Worth Street,*
　　　*"New York, N. Y.*
"GENTLEMEN:

"In consideration of your extending credit from time to time to the King Overall Company, of Suffolk, Virginia, and in further consideration of $1.00 to us paid, receipt of which we do hereby acknowledge, we do hereby jointly and severally guarantee, until further notice given by us in writing, due and regular payment of all invoices rendered by you to the said King Overall Company, covering such purchases as they may make from you, not to exceed $10,000.00.

"We jointly and severally agree that this guarantee shall be binding on us at once, without notice to us of its acceptance by you, or of any sale or extension of credit made by you under it.

"We further give you full liberty to extend from time to time the period of credit on any invoice, or any bills, notes or other instruments which may be given you by said corporation, without affecting in any way our liability under this guarantee.

　　　　"Very truly yours,
　　　　　"J. G. KING,
　　　　　"WM. C. KING.
"Witness:
　　"WM. C. KING,
　　"J. C. KING."

Pursuant to the agreement, plaintiffs furnished the company raw material amounting to the sum of $1,556.04. A number of payments were made after the guarantee was

executed, as evidenced by letters of the company to the plaintiffs from which we quote the language bearing on the question involved:

*"March 9, 1929.*
"WELLINGTON, SEARS & COMPANY,
 "*65 Worth Street,*
  "*New York City.*
"GENTLEMEN:

"Agreeable with our promise, we are enclosing a check for $400.00 to apply *on our account,* and regret that we cannot at this writing send you a larger check. However, we expect to continue to reduce this account *consistently* until it is entirely paid out with legal interest.

"With best wishes, we are
   "Very truly yours,
    "KING OVERALL COMPANY, INC.
     "WM. C. KING (Signed)
     "WM. C. KING, Secretary-Treasurer."

   "SUFFOLK, VIRGINIA, *March 19, 1929.*
"WELLINGTON, SEARS & COMPANY,
 "*65 Worth Street,*
  "*New York City.*
"GENTLEMEN:

"We are enclosing check in the amount of $200.00 to apply *on our account,* which we regret is the best we can do today. As has been previously written you, we shall continue to reduce this account regularly and next week we hope to make a much larger curtail of the balance due you.

"In the meantime, we appreciate very much your kind leniency and with best wishes, we are
   "Very truly yours,
    "KING OVERALL COMPANY, INC.
     "WM. C. KING (Signed)
     "WM. C. KING, Secretary-Treasurer."

"SUFFOLK, VIRGINIA, *April 8, 1929.*
"WELLINGTON, SEARS & COMPANY,
 "*65 Worth Street,*
  "*New York City.*
"GENTLEMEN:

"Replying to your letter of the 5th received this morning, we endeavored to take up the draft for $1,750.00 which you drew on us, but owing to other obligations we could not liquidate that amount. We owe other obligations and are doing the best we can for them all, considering poor business and slow collections.

"We are enclosing check for $250.00 to apply on account and wish to advise that it is our honest intention to send you a check each week for as much as we possibly can to apply on the account. If business will only show a little improvement, we may be able to liquidate the entire amount due you in a very short while, and this is just what we want to do.

"Thanking you, we are
   "Very truly yours,
    "KING OVERALL COMPANY, INC.
     "WM. C. KING (Signed)
     "WM. C. KING, Secretary-Treasurer."

   "SUFFOLK, VIRGINIA, *April 23, 1929.*
"WELLINGTON, SEARS & COMPANY,
  "*New York City.*
"GENTLEMEN:

"We are enclosing check for $100.00 to apply on our account. We shall send you another remittance, we hope considerably larger, during next week, and we respectfully ask your patience and cooperation.

"Thanking you for your kindness, and with best wishes we are

"Very truly yours,
"KING OVERALL COMPANY, INC.
"WM. C. KING, Secretary-Treasurer."

"SUFFOLK, VIRGINIA, *May 1, 1929.*
"WELLINGTON, SEARS & CO.,
    "*New York City.*
"GENTLEMEN:
    "We are enclosing check for $200.00 which kindly place to our credit.

"Of course we realize that our payments have not been very large for the past three or four weeks, but we have every reason to expect better business, and payments to you will get larger each week, and we really will liquidate our account with you sooner than you expect.

"Your kindness is appreciated and we will send you another check shortly.

"Thanking you, we are
        "Very truly yours,
        "KING OVERALL COMPANY, INC.
        "WM. C. KING (Signed)
        "WM. C. KING, Secretary-Treasurer."

The payments above indicated aggregated the sum of $1,150.00. This sum was applied by plaintiffs to the unsecured portions of the account due by the King Overall Company. It is the contention of defendants that pursuant to the directions contained in the letters, and in accordance with their express intention, those payments should have been applied to that portion of the indebtedness secured by the guarantee. On the hearing, the court, over the objection of plaintiff, permitted J. G. King to testify that he directed W. C. King to apply the payments on the guaranteed account. Likewise, over plaintiff's objection, this appears in the record:

"William C. King, being duly sworn, states that he is secretary and treasurer of the company and conducted all the correspondence between his company and the plaintiff in this case with reference to the payments made after January 10, 1929.

"(By Judge McLemore):

"Q. Tell us what you said about those payments.

"A. I made payments on account as stated in the letters. When they were made on account, and on notes, I stated they were made. on notes, and on specific invoices I mentioned that fact.

"Q. There were four payments of $200.00 each, the last four mentioned on this account of credits in which you apparently said nothing about how the payments were to be applied, sent them without any notations. What do you say with reference to those payments?

"A. They were applied against the guaranteed account. He had written me for payments of $200.00 each, and since he asked for those I did not see any reason to write a letter every time, but just put a check in an envelope and sent it and they were to be applied against the guaranteed account.

"Q. Did you, in your correspondence in dealing with the matter, treat the entire indebtedness as one account?

"A. No, sir; there were notes and there was a guaranteed account and there were probably one or two invoices prior to the date this guaranty was made that were not included in the note. Those invoices were handled separately, and when payment was made on note it was said specifically on note, and when on guaranteed account it was said on account."

In *Howard* v. *McCall*, 21 Gratt. (62 Va.) 205, the well settled rule upon the subject of the application of payments is thus stated: "The debtor, when he makes a payment which does not discharge the whole debt, has a right to say

whether it shall be applied to the principal or to the interest of the debt due; and where there are several bonds or notes evidencing the debt, he may say to which the payment is to be applied. When the debtor fails to exercise this right, then the creditor may make the application of the payment as to him shall seem best. * * * and where there are several debts to which the payment may be applied, in the absence of an application by the parties, the law will apply the payment to the first debt due in order of time. 3 Phillips' Evi. 337, and note with authorities there cited."

■ If it be conceded that the language employed in the letters *supra*, "to our account" or "our credit," is ambiguous, then the action of the court in admitting parol evidence to explain it is without error. However, we do not think the language is ambiguous. In addition to the signature of the King Overall Company appended to each of the letters, there appears the individual signature of Wm. C. King. That fact, together with the language used, we think was sufficient direction to the plaintiffs to apply the payments to that portion of the indebtedness for which the defendants were bound by reason of their guarantee.

In *Atlantic Trust Co.* v. *Union Trust Corp.*, 110 Va. 286, 67 S. E. 182, 184, 135 Am. Rep. 937, this court said: "It is well settled that a person proposing to become surety for the conduct or contracts of another has a right to be treated with perfect good faith."

■ No notice whatever was given by plaintiffs that they were applying the payments to the unsecured indebtedness. There is no doubt in our mind that if such notice had been given, defendants would have exercised the right reserved in the contract to cancel the same. It would indeed be going far afield to say that the defendants intended to underwrite the prior indebtedness of the company in view of the express stipulation that the guarantee was the basis of future credit.

■ We concur in the view of the learned trial court that the payments subsequent to January 10, 1929, should be applied to the indebtedness accruing since that date. When we apply those payments as a credit on the amount concededly due on account of purchases subsequent to January 10, 1929, to-wit, $1,556.04, there is still due the plaintiffs the sum of $406.04. They were entitled to a judgment for that amount and the trial court should have so held. For this error, the judgment of the lower court will be reversed and this court will enter judgment in favor of the plaintiffs for the sum of $406.04, with interest thereon from the 22nd day of April, 1929, together with the costs of this litigation.

*Reversed.*