Neil JORGENSEN, Plaintiff
and Appellee,

v.

AETNA CASUALTY & SURETY COM-
PANY, a corporation, and John Clay &
Company, Defendants and Appellants.

No. 20196.

Supreme Court of Utah.

Dec. 29, 1988.

LeRoy S. Axland, J. Michael Hansen,
Scott F. Young, Salt Lake City, for defen-
dants and appellants.

Arthur H. Nielsen, Clark R. Nielsen, Salt
Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Aetna Casualty & Surety
Company ("Aetna") appeals a final order
holding Aetna liable to plaintiff Neil Jor-
gensen for the principal sum of $60,337.68
and interest accrued after April, 1984. We
affirm.

Defendant John Clay & Company ("Clay")[1] is a livestock dealer. Clay agreed to purchase some of Jorgensen's sheep and, as required by the federal Packers and Stockyards Act, had purchased a broker's bond from Aetna. *See* 7 U.S.C. §§ 201, 204 (1982). Under the bond's terms, Aetna agreed to act as surety for Clay in its dealings as a broker with third parties up to the bond's limit of $75,000. Later, Jorgensen sued Clay and Aetna, alleging that Clay had wilfully and maliciously breached the contract to purchase the sheep and seeking to recover under the bond. Jorgensen obtained a judgment in the amount of $191,463.40. Aetna, as surety on the broker's bond, was found jointly and severally liable with Clay for $75,000 of that amount, and Clay was found separately liable for the remainder. The trial court reserved the question of liability for prejudgment interest, and attorney fees for later determination.

Clay and Aetna appealed the judgment and sought reversal on several grounds. When the appeal was taken, Clay filed a supersedeas bond for $191,463.40, the amount of damages awarded by the trial court. This bond, like the broker's bond, was purchased by Clay from Aetna. The supersedeas bond agreement stated in part:

> That we John Clay and Company as *principal* and The Aetna Casualty and Surety Company as *surety* are firmly bound unto Neil Jorgensen in the penal sum of One hundred ninety one thousand four hundred sixty three and 40/100 dollars ($191,463.40) for the payment of which we firmly bind ourselves jointly and severally.

(Emphasis added.) Although a party to the appeal, Aetna did not file a separate supersedeas bond on its own behalf to cover the $75,000 portion of the damage award for which it was jointly and severally liable. After the appeal and the supersedeas bond were filed, the trial court augmented the judgment by awarding prejudgment interest of $14,822.37, punitive damages of $1, attorney fees, and interest accruing daily after the judgment. The amount of the

supersedeas bond was not increased to cover the augmented judgment.

On appeal, this Court upheld the trial court's damage and interest awards, but reversed the awards of punitive damages and attorney fees. *Jorgensen v. John Clay & Co.*, 660 P.2d 229, 233 (Utah 1983). When the case was remanded to the trial court, Jorgensen moved for judgment against Aetna, as surety on Clay's supersedeas bond, for $191,463.40, plus the costs and prejudgment interest reflected in the total judgment, as well as postjudgment interest, all totalling $267,849.07. Clay was not involved in that proceeding, having filed a bankruptcy petition. By stipulation of counsel for both Jorgensen and Aetna, the motion was denied, and Aetna, as surety, tendered $191,463.40 to Jorgensen on the supersedeas bond obligation. Jorgensen accepted payment and released Aetna from any further obligation as surety under that bond. In acknowledging the payment, the trial court found that it had been made pursuant to the supersedeas bond and that Jorgensen's claims against Aetna as a debtor on the original judgment were reserved for future adjudication.

Jorgensen then claimed that Aetna still owed him $75,000 on the original judgment, plus interest. Aetna asserted that the $191,463.40 payment had discharged its $75,000 obligation for principal under the original judgment and that its only remaining liability was for postjudgment interest on that $75,000. Consistent with this position, Aetna then paid Jorgensen $25,097.30, the amount it calculated was due for postjudgment interest on the $75,000 judgment. Aetna claimed that as of the date of this payment, it had fully satisfied the judgment against it.

The trial court agreed with Jorgensen. It found that the $191,463.40 had not discharged Aetna's joint and several obligation for the $75,000 principal, but rather that the $191,463.40 had to be applied first to pay Clay's separate obligation under the judgment, including interest, and only then could the remainder be applied to Clay and Aetna's joint and several obligation for

---

**1.** Clay filed a bankruptcy petition in federal court and is not a party to the present appeal.

$75,000 plus the interest on that amount. According to the trial court's calculations,[2] the payment of $191,463.40 had entirely satisfied Clay's separate obligation, both principal and interest, and left a remainder which the court applied to the portion of the judgment for which Clay was jointly and severally liable along with Aetna.

The trial court applied this remainder to accrued interest on the joint obligation before applying it to principal. Using that approach, the court found that the interest due was reduced to $1,632.24 and that the principal remained at $75,000, with additional interest accruing on the principal from the date of the $191,463.40 payment. Aetna was jointly and severally liable for all of this. The court then considered Aetna's payment of $25,097.30 and found that it should be applied first to interest on the joint obligation and then to principal. The court applied the payment to satisfy the accrued interest obligation, which it calculated to be $10,434.98 on that date, and then to reduce the outstanding principal to $60,337.68. Accordingly, it ordered Aetna to pay Jorgensen an additional $60,337.68, plus costs of enforcement, plus interest accruing on the $60,337.68 principal from the date of the $25,097.30 payment until the entire obligation was satisfied.

Aetna appeals that order, arguing that the trial court erred in the manner in which it allocated the $191,463.40 payment and that, properly allocated, the payment should have discharged Aetna's joint and several obligation for the $75,000 principal, leaving only its obligation for interest, which was discharged by the payment of $25,097.30.

To begin our analysis, it is important to clarify that the $191,463.40 payment was, in effect, made by Clay, not by Aetna. Aetna had two very different roles to play at the time of that payment. First, it was a joint and several obligor under the original judgment. Second, it was Clay's surety on the $191,463.40 supersedeas bond filed by Clay.[3] When Aetna paid Jorgensen under that bond, for our purposes here it was as if Clay made the payment, not Aetna. In order to keep those roles distinct, we will refer to that payment as Clay's payment.

Aetna's challenge to the trial court's order raises two questions of law. First, what is the proper allocation to be made of a partial payment on a debt when the payor, in this case Clay, has two obligations to the payee, one a separate obligation for the entire amount due the payee and the other a joint and several obligation for a portion of that entire amount? Second, when partial payment is made on an interest-bearing debt, should the payment first be credited to principal or to interest?

In the absence of a controlling statute, we answer the first question by adopting the generally accepted common law rules. Specifically, when a debtor who is solely and individually liable for a debt and concurrently liable, jointly and severally

2. The record is somewhat unclear as to the basis for some of the trial court's mathematical calculations. Although there appear to be several discrepancies in the record with respect to the amounts and dates of the various payments and resulting obligations, neither party to this appeal has seen fit to raise a question as to the accuracy of the trial court's calculations. We therefore confine our review to the correctness of the trial court's application of relevant law and do not consider the accuracy of its arithmetic.

3. Associate Chief Justice Howe suggests that this bond was only to cover the principal amount of the judgment and that none of it should be applied to accrued interest. This works to Aetna's advantage by discharging its portion of the judgment, despite the inadequacy of the bond to pay accrued interest. It is notable that by its terms the bond made no mention of principal; it simply obligated Aetna to pay Jorgensen a fixed amount—$191,463.40—on Clay's behalf. Nor is there evidence that at the time the bond amount was paid when Clay owed interest as well as principal, Clay wanted the money paid to Aetna's benefit, as opposed to Clay's. Associate Chief Justice Howe's conclusion relies only on Aetna's self-serving statements. When it became clear that the amount of Clay's bond was not going to be enough to discharge both Clay's and Aetna's obligations for principal and interest, Aetna could have either asked Clay to purchase a larger supersedeas bond or purchased one on its own behalf. It did neither, apparently hoping for the result reached by the dissent—a free ride in its capacity as a judgment debtor because of the bond purchased from it as a bonding company by its co-obligor, Clay.

with one or more co-obligors, for a portion of that debt, makes a payment insufficient to satisfy the entire debt, under the general rule, the payment will be applied, as between the two debts, as follows: (i) if there is a controlling agreement between the debtor and the creditor, the payment shall be applied as provided in the agreement; (ii) if there is no controlling agreement, but the debtor, at or before the time of payment, indicates an intent as to how the payment should be applied, that intent shall be followed; (iii) if there is no controlling agreement and the debtor has not adequately designated how the payment should be applied but the creditor made a definite election, within a reasonable time after receipt of the payment, as to how to apply the payment, the creditor's election will govern; and (iv) if there is no controlling agreement and neither the debtor nor the creditor has made a clear, timely designation, the presumption is that the payment should be credited first to the separate debt, with any remainder being allocated to the joint and several obligation. *See generally* 60 Am.Jur.2d, *Payment* §§ 94–113, 119 (1987); 70 C.J.S. *Payment* §§ 36–54 (1987).

Aetna argues that these generally accepted rules are preempted by section 15–4–3 of the Code, which provides in pertinent part:

> The amount or value of any consideration received by the obligee from one or more ... joint and several obligors, in whole or in partial satisfaction of their obligations shall be credited to the extent of the amount received on the obligation of all co-obligors....

Utah Code Ann. § 15–4–3 (1986). Under Aetna's interpretation of the statute, when a payment is made by one who owes both an individual debt and a joint and several debt, the creditor must always apply the

payment to the joint and several debt rather than to the individual debt.

The question raised by Aetna is one of first impression in Utah. Section 15–4–3 is part of the Joint Obligations Act, codified in sections 15–4–1 to –7 of the Code. The Act was first passed in 1929, *see* 1929 Utah Laws ch. 61, §§ 1–11, and was taken verbatim in all relevant respects from the Model Joint Obligations Act,[4] promulgated in 1925 by the National Conference of Commissioners on Uniform State Laws. *See* Model Joint Obligations Act §§ 1–11 & adoption notes, tables, 13 U.L.A. 407–13, 422, 430–31, 434, 436 (1925). Hawaii, Maine, Nevada, New York, and Wisconsin also have adopted the Act. We have found no case from any of those states in which a court has adopted the construction of the language corresponding to section 15–4–3 that is urged on us by Aetna.

Moreover, the language of section 15–4–3 expressly limits the section's applicability to payments made in "satisfaction of *their* obligations." (Emphasis added.) We find this usage of the word "their" indicative of the fact that the drafters had in mind only such obligations as are shared by the obligors and did not intend that the provision govern the allocation of a payment made by one who has two separate obligations, one of which happens to be a shared obligation and the second of which is an entirely individual obligation.[5] Further, Aetna's interpretation would force us to disregard, in all cases and without exception, any agreements made between the debtor and the creditor regarding allocation of payments and to ignore the clear intent of the debtor or the creditor. Thus, that construction would effectively preclude the operation of the generally accepted rules we outlined above. We certainly cannot presume that a sixty-year-old uniform act that

---

4.  The Act was initially designated the Uniform Joint Obligations Act but was redesignated the Model Joint Obligations Act in 1943. Model Joint Obligations Act, Historical Note, 13 U.L.A. 407 (1925).

5.  The comments of the Uniform Law Commissioners are also instructive on this point. The prefatory note to the Act explains that the Act

was promulgated to address injustices in "the common law in regard to *joint* obligations." Model Joint Obligations Act Prefatory Note, 13 U.L.A. 407 (1925) (emphasis added). The entire tone of the note indicates that the drafters of the Act did not intend that the Act apply as Aetna contends when a payment is made by one who has both a joint and a separate debt.

has never been so construed by any court was intended to accomplish this purpose.

■ We therefore conclude that section 15–4–3 does not operate in the manner Aetna urges in a situation such as this, where a payment has been made by a debtor who has both an individual obligation and a separate joint and several obligation. Rather, the section applies only to a payment made by one obligor for the *purpose* of partially or wholly satisfying a *shared* obligation. In a situation such as the present one, section 15–4–3 comes into play only after application of the common law rules which we have outlined. Thus, when a debtor is liable to a creditor on two debts, one a separate, unshared debt and the other a joint or a joint and several debt, and that debtor makes a payment, we will determine how the ̇payment should be applied by resorting first to the general rules. We will begin by looking to any agreement between the debtor and the creditor, then to the intent of the debtor, next to a choice made by the creditor, and, finally, to the judicial presumption that the payment should be applied first to the individual debt, any remainder going to the shared debt. If, in accordance with these rules, we determine that the payment should be credited entirely to the separate, individual debt, section 15–4–3 does not come into play. On the other hand, if, at any point in this process, the rules dictate that a payment should be applied to the shared obligation, then that payment falls within the operation of section 15–4–3. The effect of section 15–4–3 is to mandate that the amount applied to the shared obligation shall be credited equally to the benefit of all of the debtors sharing the obligation, rather than allowing one or more, but fewer than all, of the debtors to receive the credit.[6] *See, e.g., Western Steel Co. v. Travel Batcher Corp.*, 663 P.2d 82, 84 (Utah 1983); *Green v. Lang Co.*, 115 Utah 528, 529–31, 206 P.2d 626, 627–28 (1949); *Whittlesea v. Farmer*, 86 Nev. 347, 350, 469 P.2d 57, 59 (1970); *Livant v. Livant*, 18 A.D.2d 383, 384, 239 N.Y.S.2d 608, 610 (1963).

■ We next address the question of the proper rule for allocating payments as between principal and interest. This is not an issue of first impression in Utah. We follow the general or "United States" rule. When the debtor on an interest-bearing debt makes a partial payment, absent a contrary agreement between the creditor and the debtor or a controlling statutory provision, the payment is applied first to accrued interest and then to principal. *Petty·v. Clark*, 113 Utah 205, 223, 192 P.2d 589, 598 (1948); *see Claudio v. School City of Gary*, 448 N.E.2d 1212, 1215 (Ind.Ct. App.1983); *Security Ins. Co. of Hartford v. Houser*, 191 Colo. 189, 193–94, 552 P.2d 308, 311 (1976). *See generally* 45 Am.Jur. 2d *Interest and Usury* § 99 (1969); 47 C.J.S. *Interest and Usury* § 74(a) (1982); 70 C.J.S. *Payment* § 58 (1987). Some jurisdictions have codified the rule. *See, e.g.*, Cal.Civ.Code § 1479(3) (West 1982).

■ We now apply the above-stated rules regarding the allocation of a payment between separate and joint debts and interest and principal to determine the correctness of the trial court's ruling. The first question is whether the payment of $191,-463.40 was properly allocated entirely to Clay's debt to Jorgensen. As explained earlier, the payment on this supersedeas bond must be viewed as if it were made by the bond purchaser, Clay, not by the bonding entity, Aetna. Clay had two obligations, one a joint and several obligation for a portion of the entire debt—$75,000 plus interest—the other a separate debt for the remaining principal plus interest. When Clay made the payment, there was no agreement between Clay and Jorgensen governing allocation of the payment be-

6. Our interpretation does not in any way hinder the operation of section 15–4–3 in those circumstances where it was intended to apply. Outside the narrow range of circumstances described here, the statute will continue to have full effect. When a debtor has an obligation which is shared with other obligors and that debtor has no other obligation to the creditor to whom he or she makes a payment, the above-described common law rules of payment allocation are not relevant. Section 15–4–3 governs, and it requires that the payment be credited to reduce the shared obligation and thus to reduce equally the amount owed by each debtor.

tween the two debts, and no indication of any intended allocation accompanied the payment.[7] Moreover, Jorgensen chose to apply the payment to Clay's individual debt —including both the principal and the interest that Clay owed. Under the rules set out above, the trial court quite properly found that the payment should first be applied to Clay's separate debt, interest before principal, and then to Clay's joint and several debt, interest first and principal second, with the resulting reduction of that joint and several debt being credited equally between the co-obligors, as section 15–4–3 of the Code requires.

After properly applying the $191,463.40 payment, the trial court found that Clay and Aetna remained jointly and severally liable to Jorgensen for $75,000 principal plus $1,632.24 accrued interest, together with interest accruing from the date of Clay's payment. Meanwhile, Aetna had made a payment of $25,097.30. The next question is whether the court correctly applied Aetna's payment.

■ Aetna had only one obligation. Therefore, the first set of rules we have clarified today—those describing how to treat payments made by one who is both individually liable on one debt and jointly liable on another—is not at issue. Only the rule regarding allocation of payments between principal and interest comes into play. Under the United States rule, an agreement between the payor and the payee that indicates how the payment is to be allocated governs. In the absence of a controlling agreement, the rule is that the payment applies first to accrued interest and then to principal. Aetna and Jorgensen had no agreement; Aetna simply made its payment, and Jorgensen applied it first

to interest and then to principal. The trial court therefore acted correctly when it approved that course of action. Pursuant to the trial court's calculations, Aetna's payment covered all interest accrued to the date of payment and left an obligation consisting of $60,337.68 principal, as well as all interest accruing on that amount after the date of Aetna's payment. That is the amount the court then ordered Aetna to pay.

Having considered each of Aetna's arguments and finding all to be without merit, we affirm the order of the trial court.

HALL, C.J., and STEWART, J., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. I would reverse the judgment entered below.

Judgment was entered on a jury verdict against defendant John Clay & Company on July 8, 1980, in the sum of $191,463.40 general damages and $1 punitive damages. Seventy-five thousand dollars of that judgment was also entered against Aetna Casualty & Surety Company. No prejudgment interest and, of course, no postjudgment interest were included in the above amounts. The two defendants took an appeal of that judgment, and on August 11, 1980, a supersedeas bond on appeal was filed for $191,463.40 to secure payment of the July 8th judgment which was specifically referred to in the bond. In the judgment, the district court reserved for future determination whether plaintiff was entitled to prejudgment interest and attorney fees. Subsequently, on February 23, 1981, the district court entered an amended supplemental judgment wherein plaintiff was

---

7. Associate Chief Justice Howe's dissent suggests that there was, in fact, a clear indication of the payment's intended allocation and that the trial court therefore erred. He relies on statements made by Aetna at the time of the payment. We think the record adequately supports the trial court's decision on this point for two reasons. First, the language of Aetna's statements is ambiguous, indicating only that the payment was being made "for judgment on the verdict." We do not find in these words the clear message gleaned from them by Associate

Chief Justice Howe to the effect that the payment was meant to be applied to the principal due on the entire amount owed to Jorgensen by Clay and Aetna jointly, with nothing to be allocated to Clay's separate debt for principal and interest. Second, as we explained earlier, the payment was made on Clay's behalf, not Aetna's. Therefore, the relevant inquiry was Clay's intended application of the payment, not Aetna's. Nothing in the record shows that the statements made by Aetna in fact reflected Clay's wishes.

awarded only against Clay & Company prejudgment interest of $14,822.37; post-judgment interest of $9,087.21 from July 8, 1980, to January 25, 1981, together with further interest of $45.21 per day; and attorney fees of $21,400. No amendment or addition was made to the supersedeas bond which had been filed to cover these additional awards. Under rule 73(d), Utah Rules of Civil Procedure, in effect at that time, plaintiff could have required that the bond be adequate in amount to cover the principal amount of the judgment, plus prejudgment interest, postjudgment interest which would accrue pending the appeal, attorney fees, and court costs.

This Court on appeal affirmed the judgment, except we disallowed the $1 award of punitive damages and the award of attorney fees. On April 25, 1983, Aetna sent its draft to the attorney for plaintiff for $191,-463.40, together with a letter in which Aetna stated that the payment represented "the amount of the judgment on the verdict entered in this matter on July 8, 1980." On the face of Aetna's check was the notation "for judgment on the verdict." About a year later, Aetna tendered to the attorney for plaintiff a check for an additional $25,-097.30, representing postjudgment interest which had accrued between July 8, 1980, and April 25, 1983.

It is well settled that as a general rule, a debtor when paying money to his creditor has the primary and paramount right to direct the application of his money to such items or demands as he chooses. *Utah State Bldg. Comm'n v. Great Am. Indem. Co.*, 105 Utah 11, 140 P.2d 763 (1943); *Salt Lake City v. O'Connor*, 68 Utah 233, 249 P. 810 (1926); 70 C.J.S. *Payment* § 38 (1987). This same rule applies when a surety for the debtor makes payment to the creditor. *Wellington, Sears & Co. v. King*, 157 Va. 767, 161 S.E. 889 (1932); Annotation, *Application of Payments as Between Debts for Which a Surety or Guarantor is Bound and Those for Which He is Not*, 57 A.L.R.2d 855, 872 (1958). This right of direction has been held to include the right of the debtor to apply the payment to principal instead of to interest. *State v. Erie R.R.*, 23 N.J.Misc. 203, 42

A.2d 759 (1945); *Monidah Trust v. Hruze*, 62 Mont. 444, 449, 205 P. 232, 233–34 (1922). In the last-cited case, the Montana court explained:

> The reason for the rule which confers upon the debtor the right primarily to direct the application of a payment voluntarily made by him is apparent. Until the money is actually paid over, it belongs to him, and he may do with it as he sees fit. If he makes a specific direction, the creditor must observe it or refuse to accept the payment. If he accepts and retains the money, the law will treat the payment as having been applied as directed.

The United States rule referred to in the majority opinion that partial payment must first be applied to satisfy accrued interest and then to satisfy principal does not apply when there is a designation by the debtor as to the application of his payment. 47 C.J.S. *Interest and Usury* § 74 (1982).

In the instant case, the supersedeas bond written by Aetna was in the exact amount of the principal of the judgment. The amount of the bond was insufficient to cover any prejudgment interest, postjudgment interest, or costs. Indeed, at the time the bond was written, the only amount owing by defendants was the $191,463.40 judgment of July 8th, all of which was principal. The trial court still had under advisement whether any prejudgment interest would be awarded. The amount of the bond was never increased to cover any interest. Following its appeal to this Court, Aetna made payment on the bond and by its transmittal letter and by the draft itself, specifically designated that it was in payment of the judgment entered on July 8, 1980. The amount of the draft was identical to the principal amount of the judgment, namely, $191,463.40. This identity of amount of debt and payment itself is evidence of Aetna's direction. 60 Am.Jur. 2d *Payment* § 100 (1987). However, here, we additionally have Aetna's transmittal letter in which it was recited that neither plaintiff nor Aetna was in agreement as to the balance of the interest and costs on appeal and that this issue would be heard

and determined by the district court on May 11, 1983. It thus clearly appears to me that Aetna exercised its right to have its money applied on the principal amount of the judgment and that plaintiff, by accepting and endorsing Aetna's check, was obligated to apply the funds accordingly. 70 C.J.S. *Payment* § 41 (1987).

It is of no consequence that Aetna was jointly and severally liable with plaintiff for $75,000 of the judgment and thereby benefitted by designating that its payment of $191,463.40 be applied on the principal amount of the judgment. A debtor or his surety may direct application of his payment as may be most advantageous to him. 60 Am.Jur.2d *Payment* §§ 95, 130 (1987). Clay & Company was severally liable for the full amount of the judgment, and when Aetna as surety paid the principal amount of the judgment and so designated its payment, it satisfied the entire principal amount of the judgment. Later, Aetna recognized that it was also jointly and severally liable for postjudgment interest on $75,000 of the judgment. It thereupon paid plaintiff an additional $25,097.30, thereby fully discharging its obligation as a judgment debtor and as surety for John Clay & Company.

If plaintiff is unable to recover the balance owing him because of the bankruptcy of John Clay & Company, the blame must be assigned to him for his failure to demand an adequate supersedeas bond.

DURHAM, Justice (dissenting):

I dissent. The plain language of section 15–4–3 governs the result in this case. Utah Code Ann. § 15–4–3 (1986) states:

The amount or value of any consideration received by the obligee from one or more of several obligors, or from one or more of joint or of joint and several obligors, in whole or in partial satisfaction of their obligations shall be credited to the extent of the amount received on the obligation of all co-obligors to whom the obligor or obligors giving the consideration did not stand in the relation of a surety.

This statute governs the allocation of the amount remaining from the supersedeas bond after outstanding interest was paid. Clay, on whose behalf the payment was made, gave to Jorgensen consideration which, according to the statute, "shall be credited ... on the obligation of all co-obligors." § 15–4–3. Thus, the remaining $140,175.03 should first be credited to Aetna and Clay's joint obligation of $75,000. Aetna's obligation as a joint debtor, and not as a surety, under the trial court's judgment is therefore satisfied.

The majority opinion argues that the remaining amount can be credited to Clay's separate obligation before being credited to Aetna and Clay's joint obligation. This result does not fully account for the language found in section 15–4–3. First, the statute operates when *any* consideration is received by a judgment debtor. Second, the statute clearly contemplates debts owed by several, and not only joint, obligors when it includes consideration received by the obligee "from one or more several obligors." Finally, the majority's construction renders the statute useless. If an obligor is able to specify the allocation of his payment, section 15–4–3 serves no purpose.

All funds left after satisfying the joint debt should be allocated to Clay's several obligation. Hence, subtracting the joint debt ($75,000) from the remaining funds paid on the supersedeas bond ($140,175.03) leaves $65,175.03. This amount may be credited to Clay's several obligations (consisting of the judgment amount of $191,463.40 minus the joint debt of $75,000, or $116,463.40). Thus, after applying the bond first to interest, then to joint obligations, and then to several obligations, $51,288.37 of the original judgment remains to be satisfied. This amount, however, is part of the purely several obligation owed by Clay to Jorgensen. Aetna's duties as a joint debtor were fulfilled and its obligations satisfied when the amount received by Jorgensen on the supersedeas bond was, after allocation to accrued interest, divided according to section 15–4–3.

I would therefore reverse the trial court's order holding Aetna liable to Jorgensen for $60,337.68 plus interest owed after April 17, 1984.