The receiver herein, filed a petition praying for an order directing the defendant Joseph Markle, who heretofore had been the secretary-treasurer of the defendant local, to apply to, and requisition the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, whose home office is located in Indianapolis, Indiana, for a supply of dues stamps to be given to the members of the defendant local as they pay their regular dues. The dues stamp evidences the payment of dues and the good standing of the member in the local. The defendant local has approximately eight hundred members. Those of them who are employed, work under agreements made by and between the local and the employers of labor, which provide that only members "in good standing" are to be employed by the employers of labor. An employe having no dues stamp is liable to dismissal from his employment. He can be summarily ousted. Then, again, the employers, under the existing situation, may question the validity of the agreements.
The receiver alleges that the supply of dues stamps has been exhausted; that he applied to the international body for the stamps, and was informed that they would be issued to the local only upon application of the secretary-treasurer; that he requested Archie Elkins, who is the counsel of the defendant local and of the defendant Markle, to direct Markle to apply to the international body for the dues stamps, but he, speaking for Markle, said Markle would not make the request. Thereupon, the petition herein was filed, and an order to show cause why Markle should not be directed to make the necessary application for the dues stamps, was made.
On the return of the order, counsel for Markle strenuously argued against giving the receiver any aid, and maintained that since Markle, with other officers of the local, had been enjoined by this court, from acting as an officer of the local, and from participating in any way in its affairs, his "hands were tied" and he was powerless to act. He further contended that this court, under the circumstances, lacks the authority to command, or to direct, Markle to make the required application *Page 309 
or requisition prayed for. It hardly seems necessary to observe that such contention is baseless and is absolutely without force.
It may be stated that the members of this, and every local union have a perfect right to work, and to legally remain in employment, if they desire. That is their inherent and constitutional privilege. Being possessed of that privilege, this court will, by its injunctive powers, preserve it. Its aim is to protect the rights of every member of the local and aid them in the exercise of those rights and it will either enjoin the assailants of them, or mandatorily direct the stubborn and unreasonable to act in accordance with the dictates of equity and good conscience.
The situation confronting us is somewhat novel. Should this court remain inactive and suffer eight hundred members of the defendant local to be unjustly and wantonly penalized by the loss of their jobs, because of the defiance of a deposed officer of the local? Should the machinery of equity be stalled by a chagrined officer whose efforts are devoted to harassing and hindering the attempts of this court's representative in trying to keep eight hundred men in their employment? Shall this court permit a sulking, perverse erstwhile officer of the local to hamstring eight hundred members of the local through his obstinate refusal to sign requisitions which will retain them in their positions? Certainly not. For this court to tolerate such a condition, would be tantamount to an approval of his asserted refusal and a vindication of his unwarranted stand. If there be no precedent in this state to fit the instant case, then one will be established. Where there is a wrong, there is a remedy. In theFederal Title and Mortgage Guaranty Co. v. Lowenstein,113 N.J. Eq. 200, it was observed (at p. 209):
"It is said that there is no precedent for this court's intervention in the instant case; but want of precedent has never been considered a bar to appropriate action by this court.
"`The absence of precedents or novelty in incident presents no obstacle to the exercise of the jurisdiction of a court of equity. * * * It is no objection to the exercise of jurisdiction *Page 310 
that in the everchanging phases of social relations a new case is presented and new features of wrong are involved.' Vanderbilt
v. Mitchell, 72 N.J. Eq. 910 (at p. 923).
"`The principles of equity will be applied to new cases as they are presented, and relief will not be withheld merely on the ground that no precedent can not be found.' Earle v. AmericanSugar Refining Co., 74 N.J. Eq. 751.
"One of the maxims lying at the very foundation of equitable jurisprudence is that `equity will not suffer a wrong without a remedy.'"
No one can sanely assert that the innocent members of the local who are in "good standing" should be denied their dues stamps; they are entitled to them. Since their former secretary-treasurer and fellow member will not voluntarily help them obtain the dues stamps, then equity will force him to.
The petitioner herein is acting as a custodial receiver for the defendant local. His function is to preserve and not to destroy his charge. His powers, under the circumstances, are to some extent expressed in Smith v. Washington Casualty InsuranceCo., 110 N.J. Eq. 122, where the court, inter alia, said:
"The inherent equitable jurisdiction of this court to appoint a receiver of a corporation is limited to the appointment of custodial receivers whose function is to preserve and not to destroy. Sternberg v. Wolff, 56 N.J. Eq. 389, 555; Morse v.Metropolitan Steamship Co., 88 N.J. Eq. 325; Atwater v.Baskerville, 89 N.J. Eq. 121; In re New Jersey RefrigeratingCo., 95 N.J. Eq. 215. * * * The appointment of a custodial receiver is a pendente lite appointment, does not vest title to the corporate assets in the receiver, and does not require dissolution of the corporation."
Markle's counsel, in the course of his argument, adverted to the fact that the court of errors and appeals instructed the receiver herein to maintain the status quo. In discussing the maintenance of the status quo, his argument suggested the inference that the receiver was merely to supinely rest on his title and close his eyes to the duty imposed upon him to preserve *Page 311 
the assets of the local. His contention does not accord with the views of this court. The receiver cannot remain quiescent under the circumstances. Inactivity by him would jeopardize the existence of the local and force its members out of their employment.
The court of errors and appeals, in the application made to it by the defendant's counsel for a stay of the order appointing the receiver herein, said:
"The motion for stay is granted to the extent that the receiver is restrained from doing anything not essential to the conservation of the property of the union."
What does that declaration mean? Does it mean that the petitioner is, or is not, the receiver of the defendant local? The memorandum of the court of errors and appeals does not change the status of the receiver. It simply restrains him from "doing anything not essential to the conservation of the property of the union." Can it be said that the receiver's efforts to maintain the existence of the local by insisting upon the production of the dues stamps, is not essential to the conservation of the property of the union? It cannot. No act of his is more "essential to the conservation of the property of the union" than the course of conduct he prays for in his petition. That order of the court of errors and appeals is not a curb upon this court to the extent counsel for the defendant implies, and it does not stay it from granting the relief prayed for — necessary relief which is calculated to sustain the life of the local.
32 Corp. Jur. 25, lays down the rule of the status quo in the following words:
"While it is generally true that the office of a preliminary injunction is to preserve the status quo until upon final hearing the court may grant full relief, and that this can be accomplished by an injunction prohibitory in form, it sometimes happens that the status quo is a condition not of rest but of action and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits." *Page 312 
This principle has been affirmed in this state by Chancellor Runyon in the case of Broome v. New York, c., Telephone Co.,42 N.J. Eq. 141, where this court stated as follows:
"Under such circumstances the court will not hesitate, in a proper case, to grant a mandatory injunction. Whitecar v.Michenor, 10 Stew. Eq. 6. This is such a case."
The leading case on this subject is a decision by Judge Taft, later chief-justice of the United States supreme court, in the case of Toledo, A.A. N.M. Railway Co. v. Pennsylvania Co.,54 Fed. Rep. 730, appeal dismissed, 150 U.S. 393, where he (Judge Taft) held as follows:
"The office of a preliminary injunction is to preserve thestatus quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the statusquo is a condition not of rest but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits. Robinson v. LordByron, 1 Brown Ch. 588; Lane v. Newdigate, 10 Ves. 192; Hervey
v. Smith, 1 Kay J. 392; Beadel v. Perry, L.R. 3 Eq. 174;Whitecar v. Michenor, 37 N.J. Eq. 6; Broome v. Telephone Co.,42 N.J. Eq. 141; 7 Atl. Rep. 851.
"Now, the normal condition — the status quo — between connecting common carriers under the interstate commerce law is a continuous passage of freight backward and forward between them, which each carrier has a right to enjoy without interruption, exactly as riparian owners have a right to the continuous flow of the stream without obstruction. Since Lord Thurlow's time the preliminary mandatory injunction has been used to remove obstructions and keep clear the stream. Robinson v. LordByron, 1 Brown Ch. 588; Lane v. Newdigate, 10 Ves. 192. So an obstruction to the flow of interstate freight must be preliminarily enjoined, even though it requires a mandatory injunction."
Judge Brewer, in the case of United States v. Western UnionTelegraph Co., 50 Fed. Rep. 28, 43, in passing upon *Page 313 
the question whether the proper remedy was by mandamus or by mandatory injunction, said:
"The only remaining question which I deem important to consider is the objection made to the jurisdiction of a court of equity. It is urged that if a duty is cast upon these corporations, it must be enforced by mandamus. I had occasion to notice this question in the case of Chicago, R.I. P. Railway Co. v.Union Pacific Railway Co., 47 Fed. Rep. 15, and deem it unnecessary to add anything to my observation in that opinion, * * *. The determination of its interest therein, protection against their sacrifices, and the securing of payment to it from the railway company are matters which cannot be settled by a court of law in proceedings in mandamus. A court of equity, with its flexible procedure, can alone meet all these exigencies. The jurisdiction of such a court seems to me necessary and unquestionable."
32 Corp. Jur. 236, on this point, holds as follows:
"* * * and it has been held that an injunction will lie even though complainant would have the right to proceed bymandamus."
The answer to counsel's contention that this court is without power to grant the relief prayed for because of its restraint heretofore ordered, is found in 32 Corp. Jur. 432, 433, where the rule is laid down that:
"The court has inherent power in its discretion temporarily to suspend an injunction when the exigencies of the case require it."
This last quoted rule was invoked, and is to be found expressed in the case of Edison Electric-Light Co. v. United StatesElectric-Lighting Co., 59 Fed. Rep. 501, where the circuit court of appeals, affirming the district court in a per curiam
opinion, held as follows:
"The affirmance in this court of a preliminary order or an interlocutory decree granting an injunction does not operate to deprive the circuit court of the power, inherent in it, temporarily to suspend such injunction, upon sufficient cause shown, after proper notice, whenever the ends of justice call for the exercise of such power." *Page 314 
It is absolutely essential that in order to permit the defendant local to continue to function and to be of service to its members, and to preserve its assets, and preserve the rights of its members, both with respect to the benefits obtained from the union, and in enabling them to obtain, and retain, employment, the union workers receive their dues stamps from the International Brotherhood of Teamsters, c.; and being satisfied that the status quo of the defendant local cannot be preserved unless the relief prayed for in the petition be granted, I shall, therefore, advise an order modifying the injunction and restraints at present in existence against the defendant Joseph Markle to the extent that he, as secretary-treasurer of the defendant local, desist in his refusal to execute requisitions to the International Brotherhood of Teamsters, c., as aforesaid, for the securing of dues stamps for the members of the defendant local. And I further direct that he be commanded and instructed, in the order, forthwith to execute such requisition in the form as executed by him and his predecessors in office, if any, for the dues stamps as aforesaid, and that he execute such additional requisitions from time to time for dues stamps as will be required by the aforesaid receiver of the defendant local.