In re CENTRAL R. CO. OF NEW JERSEY.

No. 8808.

Circuit Court of Appeals, Third Circuit.
Argued April 10, 1947.
Decided July 15, 1947.
Writ of Certiorari Denied Oct. 27, 1947.
See 68 S.Ct. 112.

**GOODRICH, Circuit Judge, dissenting.**

Benjamin C. Van Tine, of Trenton, N. J. (Walter D. Van Riper, Atty. Gen. of New Jersey, and Milton B. Conford, of Newark, N. J., on the brief), for appellants.

James D. Carpenter, of Jersey City, N. J. (Howard L. Kern and Alexander H. Elder, both of New York City, on the brief), for trustee of debtor appellee.

Blair Reiley, of Newark, N. J. (A. M. Lewis, and Frank H. Heiss, both of New York City, Reynier J. Wortendyke, Jr., of Newark, N. J., Rathbone, Perry, Kelley & Drye, and Autenreith & Wortendyke, all of New York City, William A. Roberts, Philip S. Jessup, and Roberts & McInnis, all of Washington, D. C., Fred N. Oliver, Willard P. Scott, and Oliver & Donnally, all of New York City, Martin & Reiley, of Newark, N. J., Thomas Raeburn White, of Philadelphia, Pa., Edwin M. Slote, of New York City, and White & Williams, of Philadelphia, Pa., on the brief), for bondholders groups, etc., appellees.

Milton B. Conford, of Newark, N. J. (Charles A. Rooney, Atty. for Jersey City, and Charles Hershenstein, both of Jersey City, on the brief), for City of Jersey City amicus curiae.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

**McLAUGHLIN, Circuit Judge.**

This appeal concerns another phase of a matter long in litigation. The past history of it is summarized in a previous decision of this court reported at 3 Cir., 152 F.2d 408, 411, affirmed in part and reversed in part sub nom Gardner, Trustee of the Central Railroad of New Jersey, v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467. Some of the facts relevant here have been reported earlier; but those necessary will be set down regardless of that, in order to present the current question in an orderly way.

During the last two decades, New Jersey and the railroads operating within its borders have been at odds about taxation. Most of those railroads were in arrears in tax payments and some of them were in bankruptcy. The debtor here is one such railroad. In connection with this situation and after bitter controversy New Jersey enacted two statutes known as the Settlement Acts. The first of these, c. 290, P.L. 1941, p. 768, provided for payment by installments of previously delinquent railroad taxes. It forgave interest theretofore accrued and set up a new, lower rate of interest on installments to be paid. It waived other methods of the state for collection. It required waivers by the taxpayers of objections and suits contesting previous levies, the filling out of forms and the following of fixed procedures. Approval of the forms used was required of the State Attorney General. The railroads attempted to comply with the Act, but the Attorney General refused to approve the necessary forms. Drawing forms of their own, the railroads filed them together with installment payments at the office of the State Treasurer. Finally, the Attorney General brought an information in the New Jersey Court of Chancery to test the Act under the state constitution, and he secured a temporary restraint against the State Treasurer. The second Settlement Act, c. 241, P.L. 1942, p. 651, amended the title and body of the first, altering the method and nature of the provisions in a manner not here pertinent, and adding a few new provisions. On the very day of its enactment, Chancery extended its injunction of the first Act to include the second as well. The debtor here nonetheless made some vain effort to comply with the terms of the New Act.

In Wilentz v. Hendrickson, 133 N.J.Eq. 447, 33 A.2d 366, Chancery held both Settlement Acts were invalid and permanently enjoined compliance with them by the State Treasurer, the only named defendant in the case. The pertinent provisions of the final decree invalidating the Settlement Acts are as follows:

"1. That Chapter 290 of the Laws of 1941 and Chapter 241 of the Laws of 1942 are in contravention of Article I, Section 20, of the Constitution of the State of New Jersey [N.J.S.A.], and are null and void.[1]

"2. That the defendant, Robert C. Hendrickson, State Treasurer, his successors in office and his and their respective agents and servants, be and they are hereby each, severally, permanently restrained and enjoined from carrying out or executing any and all of the provisions of Chapter 290 of the Laws of 1941 and of Chapter 241 of the Laws of 1942, and from accepting from any railroad taxpayer any acceptance documents, discharges or dismissals, discontinuances, checks or other forms of payment which may be delivered to him or them or which were heretofore delivered to him or them in purported compliance with Chapter 290 of the Laws of 1941 and Chapter 241 of the Laws of 1942, and from depositing any such checks or other forms of payment or distributing the proceeds thereof."

This decision was affirmed on its own reasoning and that of the Court of Errors and Appeals. 135 N.J.Eq. 244, 261, 38 A.2d 199.

Thereafter the debtor petitioned the Bankruptcy Court, in which it had been for some time for reorganization, to ascertain its status and obligations toward the state following the events above outlined. The debtor desired to know if the voiding of the Settlement Acts applied to it and if its attempted compliance with those Acts spelled out the execution of a contract with the state. By its order 250 the reorganization court appointed a master to ascertain a number of matters in the reorganization, including, by implication, power to recommend answers to the above problems. To this order the State Attorney General took exception. Representing New Jersey as a creditor for taxes in the debtor's reorganization, he petitioned for a stay against the master until a state court had passed upon the questions and for permission to bring those

---

[1] The above language disposes of the debtor's claim that the Acts were voided only in part.

questions before that court. The reorganization court denied this petition.

The appeal from that denial, which is now at bar, was kept pending during the determination by the Supreme Court in the Gardner case, supra. Justice Douglas, speaking for that court in the Gardner opinion said, concerning this appeal, at page 582 of 329 U.S., at page 476 of 67 S.Ct.:

"This controversy is now in a different posture. New questions of local law emerge—whether Wilentz v. Hendrickson, supra, controls this case; whether a valid settlement can be made under an unconstitutional act and, if so, whether this alleged compromise was valid and effective; whether, if the settlement was not binding, the amount of the claim or the extent of the lien has been altered by the payments made during reorganization or by the conduct of the parties.

"These points have been briefed and argued here. The difficulty is that neither the reorganization court nor the Circuit Court of Appeals passed on them. The reorganization court passed solely on a question of jurisdiction—whether it had the power to make adjudications concerning the amount of New Jersey's claim which should be allowed and the validity and extent of her lien, or whether New Jersey's sovereign immunity stood in the way of such determinations. And the Circuit Court of Appeals did not pass on these questions because it, too, was concerned solely with the question of jurisdiction.

"These issues bristle with questions of New Jersey law on which we should not pass, even if we were to assume they are properly here, without the benefit of the views of judges who sit there and have a greater familiarity with local law and local practices than we. [Citing cases] * * * Moreover, we are now advised that there is presently pending before the Circuit Court of Appeals an appeal by the Attorney General of New Jersey from an order of the reorganization court denying leave to join the trustee as party defendant in a suit in the New Jersey courts to determine whether there was a valid settlement of the tax claims and to stay further determination of that controversy in the federal court until the state courts have passed on the question. If the Circuit Court of Appeals orders the application granted, cf. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876; Ex parte Baldwin, supra, 291 U.S. [610] page 619, 54 S.Ct. [551], 555, 78 L.Ed. 1020, the state law phases of the controversy will be authoritatively settled. If the other course is followed, the issues can be resolved by the reorganization court on a record more adequate than the present one for purposes of review. Whatever procedure is followed it is more fitting that those more versed than we in the intricacies and niceties of New Jersey law first pass on these questions."

I. The first question to be passed upon is therefore whether a state court or a federal court should decide if the setting aside of a state statute applies to a party not represented in the state court and if the parties are bound by an alleged compromise reached earlier under that void Act.

█ If that were the only question present, the problem could be determined quite simply in favor of the federal court. There would be involved between parties properly in a federal forum under the terms of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., a number of state law questions to be decided by an application of state law as prescribed by Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. There is no problem of the violation here of the federal constitution by a state statute as yet unconstrued by state courts, such as was present in Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Alabama State Federation of Labor et al. v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; and Beal v. Missouri Pacific R. Co., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577.

There is ordinarily no state problem so difficult that its solution must on that ground be shunted to state courts. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. There is no lack of relevant New Jersey law on constitutions and contracts to force the court below to request state scrutiny of the facts at bar as in Thompson, Trustee, v. Magnolia Petroleum Co. et al., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876.

But there are additional factors which must be kept in sight in determining the forum for the questions involved. There is the final New Jersey decree stating the Settlement Acts are unconstitutional as to the world. There is the permanent New Jersey injunction against action by the State Treasurer, without whose acceptance of tax payments nothing can be done. Whether any New Jersey court has really passed on the constitutionality of the Settlement Acts as to the debtor and whether any such court has really meant there is no contract will be considered below. At the moment, however, it is enough to point out that an existing judgment of a sovereign power has said both of those things.[2]

With the decree in mind, let us suppose the Bankruptcy Court declared the Settlement Acts valid as to the debtor, as it claimed by order 260 that it had jurisdiction to do. Suppose the debtor then tendered his payment to the state under those Acts. The injunction which is still in effect would render both such assumed actions nugatory.

Suppose, again, the Bankruptcy Court held the Settlement Acts void as to the debtor but held, beyond that, a contract had arisen between debtor and state by reason of the debtor's earlier compliance with the Acts. Suppose the tender were then made to the state as the fulfillment of the contract. The same injunction would bar the way.

■ If either contention of the debtor is sound, the injunction must be dissolved. This is a matter for the Court of Chancery. Mullins v. Merchandise Drivers, Etc., 120 N.J.Eq. 307, 313, 185 A. 51. An injunction is only dissolved by that court upon a satisfactory showing that such action is proper. Manhattan Mfg. Etc. Co. v. Van Keuren, 23 N.J.Eq. 251, 253. The mechanics of the procedure are carefully outlined in Rule 215 of Rules of the Court of Chancery; N.J.S.A. Title 2.

■ If the court below were to sustain either contention of the debtor, its findings on New Jersey law while binding upon the parties, would not be binding upon the courts of New Jersey. Erie R. Co. v. Tompkins, supra. The state courts "would not be bound to follow" the "unstable foundation" of the Bankruptcy Court's "anticipating * * * an authoritative construction of * * * state" law. Stone, C. J., in Alabama State Federation of Labor et al. v. McAdory, supra, 1945, 325 U.S. at page 471, 65 S.Ct. at page 1394, 89 L.Ed. 1725; and compare Spector Motor Service, Inc., v. McLaughlin, supra, 1944, 323 U.S. at page 105, 65 S.Ct. at page 152, 89 L.Ed. 101. The decision of the court below would "be displaced tomorrow by a state adjudication. * * * The reign of law [would] hardly [be] promoted if an unnecessary ruling of a

---

[2] It is to be noted, that the debtor and its trustee deny that the injunction is relevant in the present dispute. At the argument, their counsel asserted in effect that when the state came into Bankruptcy it chose to ignore its own Chancery decree and to give the court below full power to adjudicate its tax claim. But such reasoning begs the question, for the point is not what the Bankruptcy Court can do with a claim already filed (Cf. Gardner v. New Jersey, supra) but rather what the claim actually was which New Jersey presented for filing. The injunction concerns the power of the state under its constitution to do certain things. If it did not have power to assert a claim under the Settlement Acts, the Bankruptcy Court can't give it such power. If the Acts be void ad hoc and if there be no contract including them, then the state cannot file a claim in accordance with them, nor can it accept payments allegedly made under them. If the state is enjoined from making or accepting a certain claim, the court below can neither dissolve nor ignore the injunction. Cf. opinion of Judge Maris at a prior juncture of this case, 3 Cir., 136 F.2d 633.

federal court [were] thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision * * *." Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. at page 500, 61 S.Ct. at page 645, 85 L.Ed. 971. Unfortunately, however, if this case continues at its past pace, the supplanting state court decision would probably not come "tomorrow," but several years hence. More time would be consumed in a matter all parties agree has gone on much too long. To keep the case here under such circumstances would be to make necessary duplicate decisions or, at best, to force another jurisdiction to follow where it has full authority to lead. There is no question but that, either if the Acts are valid ad hoc or if a valid contract still exists, the problem before the court must be sent back for decision to the Court of Chancery of New Jersey, which alone in its discretion can dissolve its own injunction. The sending of such a matter to a state court might be unusual, but this is an unusual situation. "While such practice is to be regarded as exceptional, the circumstances which here suggest it appear to be exceptional," said Stone, C. J., of just such a reference to a state court in Mangus v. Miller, 317 U.S. 178, 186, 63 S.Ct. 182, 186, 87 L.Ed. 169.

In brief, if a decision of the court below on the substantive issues would contravene the existing injunction, the denial by that court of New Jersey's request to determine them in a state court was error. If such a decision would not contradict the injunction, the denial was correct, and the matter is one wholly of federal concern. Hence to decide whether the answers are the task of one jurisdiction or the other requires some inquiry into what the decision of the lower court would be. If the Acts are clearly void ad hoc and if there is clearly no contract to sustain the Acts'

provisions, then the district court judgment is to be affirmed. Otherwise a reference to the state courts for a determination of the issues is inescapable.[3]

■ II. The first of those issues is the constitutionality of the Settlement Acts as to the debtor. Upon the answer to this problem the final decision herein is not to turn, but the issue of contract vel non cannot be clearly perceived until validity is disposed of. If the Acts are valid, no inquiry into the contract problem is necessary.

In Wilentz v. Hendrickson, 135 N.J.Eq. 244, 38 A.2d 199, after stating the question of the constitutionality of the Settlement Acts the majority opinion of the Court of Errors and Appeals continues, 135 N.J.Eq. at page 246, 38 A.2d at page 201:

"A few prefatory words as to the parties are desirable. In form, this is a suit between two of our high state officials, the Attorney General and the State Treasurer, each appearing in a representative capacity. The status of neither is questioned. The Attorney General, 'acting in behalf of the people of the state' filed an information challenging the constitutionality of the two statutes, supra, and the State Treasurer defends their constitutionality, with the aid of counsel, at the expense of the state, as 'authorized and directed' by P.L.1941 ch. 391, p. 1012. *In substance, the actual parties affected by this suit are the people of the state, on the one side, and the private railroad taxpayers, on the other.* With this in mind we turn to the consideration and determination of the merits of this case as submitted." (Emphasis added).

After the decision in the above quoted case, some of the railroads other than the debtor involved in a tax dispute with New Jersey were made defendants in State v. Erie Railroad et al., 42 A.2d 759, 23 N.J. Misc. 203, a Supreme Court action heard before Circuit Judge Oliphant, who is the

---

[3] It is not disputed that a bankruptcy court may exercise to the full the federal power in that field. Williams v. Austrian, 67 S.Ct. 1443. But this federal power does not extend to the validation of voided state statutes or the invalidation of state judgments. Cf.

Wright v. Union Central Life Insurance Co., 304 U.S. 502, 517, 58 S.Ct. 1025, 82 L.Ed. 1490. It will not be a deprivation of jurisdiction from the court below to declare it may do neither of those things.

present Chancellor. Sitting as Supreme Court Commissioner, Judge Oliphant, as part of his elaborate discussion of the issues there raised, asked, 42 A.2d at page 762, 23 N.J.Misc. at page 208:

"II. Were the payments made by the defendant pursuant to and subsequent to the passage of the 'Settlement Acts' payment of taxes and valid and sufficient to stop the running of interest on the principal taxes as represented thereby?"

Answering his own question, he said, 42 A.2d at page 766, 23 N.J.Misc. at page 217:

"The defendant, when it made its payment on August 4, 1941, knew the act in pursuance of which it was made had not been complied with, i. e., that the payment and other documents should be in the form approved by the Attorney-General. While the certified check was received and receipted for by the Comptroller and the Treasurer it was never deposited or cashed, though retained.

"The defendant who knew this situation, undoubtedly could have secured the return of its check but it preferred to let it remain in the hands of the Treasurer pending the outcome of the attack on the constitutionality of the 'Settlement' acts. Even after the restraint imposed on the Treasurer by the decree of the Court of Chancery on May 21, 1942, it continued to leave it in his custody.

"The final decree of the Court of Chancery, Wilentz v. Hendrickson, supra, adjudged and decreed the 'Settlement Act' as being in contravention of Art. I, par. 20 of the Constitution, N.J.S.A., and null and void, and permanently enjoined the State Treasurer from carrying out or executing any of the provisions thereof. *It therefore follows that anything done in pursuance thereof was of no force or effect.*" (Emphasis added.)

The English language can scarcely be made more plain.[4]

Whatever objections may be perceived to so distinct a proposition can be dealt with shortly. First, the debtor and the trustee assert that, under New Jersey constitutional law, the voiding of a statute affects only the parties to the suit in which the statute was voided. Though there are prior cases to that effect,[5] they have obviously been overruled by New Jersey's highest court so far as this issue is concerned. The language above quoted from the Wilentz opinion shows that. The State Supreme Court so interpreted it. And logic demands that we agree, for if only the State Treasurer had been affected by the injunction, its issuance would have been foolish indeed. It would have meant that the Acts were void as to the Treasurer, who was therefore enjoined from accepting tax payments under them, but that they were valid as to the taxpayers, who could pay their taxes under them. Such a conclusion could only result in a large stack of unclaimed checks—certified for millions of dollars—in the outer office of the State Treasurer.[6] The Court of Errors and Appeals could have intended no such thing.

Secondly, the debtor and trustee assert that, by New Jersey constitutional law, rights accruing under a statute later voided remain in force. In essence, they aver

---

[4] Compare the comment on this case in "Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions," 60 Harv. L.R. 437, 446.

[5] In Allison v. Corker, 67 N.J.L. 596, 601, 52 A. 362, 60 L.R.A. 564, and Lang v. Bayonne, 74 N.J.L. 455, 459, 68 A. 90, 15 L.R.A.,N.S., 93, 122 Am.St.Rep. 391, 12 Ann.Cas. 961 (and in other later, but less detailed cases) the Court of Errors and Appeals distinctly held that the determination of state constitutionality was an in personam and not an in rem action. It is not necessary for this court to hold that Wilentz v. Hendrickson overruled those decisions, since being in equity it can be regarded as an in personam action resulting in an injunction. Elgart v. Mintz, 123 N.J.Eq. 404, 411, 197 A. 747. Such an action can, of course, have an effect on a res. Pennoyer v. Neff, 95 U.S. 714, 723, 24 L.Ed. 565. The res here was the Settlement Acts which were affected by being declared unconstitutional. (They could admittedly not be affected to the point of lessening the already vested rights of a party not represented. Such a right asserted here, the matter of the contract, will be treated below.)

[6] Compare the remarks of this court on this subject at 136 F.2d 638.

that unconstitutionality in New Jersey is prospective only. Granting again that prior New Jersey cases might so indicate, Wilentz v. Hendrickson, supra, reached the opposite conclusion. The decree it affirmed, forbade *all* compliance with the Settlement Acts. Nor is such retroactive effect unusual or unjustified. Cf. 60 Harv.L.R. 437, 448 (cited supra, footnote 3).

The question now presents itself, whether, with the Settlement Acts invalid altogether, there is a contract made before the declaration of invalidity under which the debtor and the state are bound to carry out the terms of the Acts. The assertion that there is, made by the debtor, is coupled with a claim of a compromise under Section 27 of the Bankruptcy Act, 11 U.S.C.A. § 50, and what seems to be an implied request for an equitable set off against the state for the manner in which it has confused its claim. Those contentions are of no moment on this appeal. The only question at bar is whether there is a valid contract under the Settlement Acts, as the debtor contends. Those settlement statutes themselves are said to be the offer and the refusal of the Attorney General to perform his part under the statute is asserted to be of no importance. 3 Williston on Contracts, § 677.

Against the existence of a contract in this instance many arguments can be made. The very fact that the decree of Wilentz v. Hendrickson forbade all compliance with the Settlement Acts could be inferred to mean any contract under them was void, and void retroactively. But the problem of contract was rather clearly excluded from the issue involved in the very first hearing of that case. 133 N.J.Eq. 447, 33 A.2d 366. Since unconstitutionality is the only problem decided there, it is not unlikely that the injunction was to apply only to it, and that a decision on the contract issue might have permitted, had a contract been proven, an exception in the wording of the decree. Moreover, as to the issue of contract, it would be unfair to say that the debtor could be affected, not being before the court.

A second argument against the existence of a contract can be based on the contention that the Settlement Acts were not an offer. In State v. Erie Railroad, supra, the New Jersey Supreme Court stated, 42 A.2d at page 762, 23 N.J.Misc. at page 209, that a tax "is not founded on contract or agreement." But the court was not there considering the precise question here involved. Nor can so brief a statement be held to settle for New Jersey such an issue (the rise of contract through tax relief statutes) which has perplexed many a legal giant. Piqua Branch Bank v. Knoop, 16 How. 369, 14 L.Ed. 977; Northwestern University v. Illinois, 99 U.S. 309, 25 L.Ed. 387; and compare 1 Williston on Contracts, Revised Edition, § 21.

■ Still a third argument can be made against a contract here based on lack of consideration. Both Wilentz v. Hendrickson opinions, on the theory that the presence of a constitutional issue permitted an exception to the usual rule against weighing consideration, examined into it quite thoroughly. 133 N.J.Eq. 447 et seq., 33 A.2d 366; 135 N.J.Eq. 258, et seq., 38 A.2d 199. They found just about none. The language of the Vice Chancellor was almost conclusive at page 486 of 133 N.J. Eq., at page 389 of 33 A.2d: "In the existing state of the proofs, I must reject the contention that the legislative action was of a contractual character." But both those opinions quoted and followed the distinction of the New York Court of Appeals in McGovern v. New York City, 234 N.Y. 377, 138 N.E. 26, 25 A.L.R. 1442, where Justice Cardozo, then Chief Judge, held that a more adequate consideration was necessary to sustain a bargain under a constitutional prohibition against gifts than under the law of contracts. That there was insufficient consideration to sustain the arrangement of the Settlement Acts under the New Jersey Constitution was decided by Wilentz v. Hendrickson. That there was insufficient consideration to uphold it as a contract was not decided.[7] Theoretically, at least, some consideration might exist. Very little would be needed

---

[7] State v. Erie R., supra, despite the language quoted just above, cannot safely be said to have decided this contract issue as to the other railroads. Its final

in New Jersey to uphold a contract. Day v. Gardner, 42 N.J.Eq. 199, 202, 7 A. 365; Phillips v. Pullen, 45 N.J.Eq. 830, 836, 18 A. 849; Headley v. Leavitt, 65 N.J.Eq. 748, 55 A. 731. In the Headley case, 65 N.J.Eq. at page 753, 55 A. at page 734, the Court of Errors and Appeals said:

"The consideration to support a promise may be either a benefit accruing to the promisor or a loss or disadvantage to the promisee. [Citing New Jersey cases] The detriment to the promisee necessary to constitute a consideration is sufficient if it consists of the simple surrender of a legal right. And in fact any act which constitutes a change of the legal position of the promisee may be a valid consideration. * * * It was not necessary to the validity of the contract that the consideration should move directly to the respondent. It was sufficient if it passed to third persons at her request. * * * Nor does the matter of the adequacy or inadequacy of the consideration enter into the question of validity. That is left to the free choice and personal judgment of the parties." [8]

For the court below to say there was or was not sufficient consideration under New Jersey law as settled by these cases would be a ruling not res adjudicata in the state courts. Though it would be proper in the ordinary diversity case, in the present instance it could not force the New Jersey Court of Chancery to preserve or dissolve its injunction.

We are left, therefore, with the unsolved problem of whether one specific court of the State of New Jersey would hold this arrangement to be contractual in nature. Both this court and the bankruptcy court can but guess as to what that decision would be. Only by reference to that state forum can the problem be solved, after which the injunction may be lifted to permit payments under contract or may be safely left intact because there is no contract.

■ Neither of such actions will of it-self conclude the Bankruptcy Court's work in this litigation. But the duration of the case is no reason for failing to do what has to be done. City of Chicago v. Fieldcrest Dairies, supra, 316 U.S. at pages 172, 173, 62 S.Ct. at page 986, 86 L.Ed. 1355. To keep the case in the court below in the hope a decision would result against the existence of a contract, thus making unnecessary a duplicate suit in the state court, would be an unjustifiable gamble for a possible saving of time. To lose it would cost much more time.

■ We fail to see the slightest difficulty in having the meritorious questions connected with this appeal passed upon by the New Jersey Court of Chancery. A real controversy is presented between the parties which is plainly and peculiarly justiciable in that state court. The existing Chancery decree affirmatively deprives the debtor of the rights and benefits of its alleged contract with the state. The debtor was not a party to the proceedings which resulted in that decree but is, under Wilentz v. Hendrickson, supra, affected by the decree. We think that upon proper application, the New Jersey Court of Chancery will recognize the validity of the questions presented to it and expeditiously dispose of them. In that manner the basic problem of whether there is a contract between the debtor and the State of New Jersey as alleged by the former "will be authoritatively settled" as pointed out by the United States Supreme Court in the Gardner opinion, supra [329 U.S. 565, 67 S.Ct. 477].

The above discussion of the applicable facts and law requires a reversal of the action of the District Court. But one procedural problem remains to be considered. This appeal was instituted by New Jersey on the theory that the Bankruptcy Court abused its discretion in not referring the issues to the state court. The debtor and the trustee have defended on the contrary of that theory, namely, that no discretion was abused. Both parties have briefed and argued the problem

---

conclusion of the invalidity of the taxpayers' tenders under the Act, quoted earlier above, was based altogether on the decree of unconstitutionality.

[8] The fact that the state is a party to the alleged contract might possibly affect this New Jersey consideration rule. Cf. McGovern v. New York City (supra).

of discretion at great length, as if the question before us were merely that of the more convenient of two forums each of which has jurisdiction. As we indicated at the beginning, if that had been the only question involved and if the Bankruptcy Court had properly exercised its discretion, that would be the end of the matter. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 677, 55 S.Ct. 595, 79 L.Ed. 1110; In re Youtie, 3 Cir., 44 F.2d 56; Wilton Realty Corp. v. Weadock et al., 6 Cir., 106 F.2d 1022; Field v. Kansas City Refining Co. et al., 8 Cir., 296 F. 800, 806.

■■■ However, this court is obviously not bound to treat a question of law as the parties before it mistakenly believe it should. Moreover, it is notable that the Supreme Court in the Gardner opinion, as quoted above, carefully avoided limiting this court to a decision on the discretionary issue argued there as well as here; on the contrary, it stated simply that what we have before us is "an appeal from an order," and left to us altogether the determination of the applicable law. The scope of this court's determination of such law is broad. 28 U.S.C.A. § 225(c); 11 U.S. C.A. § 47.[9] An appellate court may go behind discretion to ascertain correct legal standards. Bratt v. Western Air Lines, 10 Cir., 155 F.2d 850, 853. Surely it may seek out and apply the law behind a mere erroneous assertion that discretion is the issue.

That assertion of the issue of discretion in this case has been rebutted by the law discussed. There is no reasonable choice of alternatives upon which discretion could be exercised. It cannot be said to be present in a failure "to apply well-settled principles of law to a conceded state of facts." Union Tool Co. v. Wilson, 259 U.S. 107, 112, 42 S.Ct. 427, 429, 66 L.Ed. 848. We have not here, as the parties and the district court appear to, believe, a question of which of two courts might better decide an issue. We have rather a question which only one court can effectively decide. In this situation, we do not find it necessary to decide whether or not there was an abuse of legal discretion by the District Court. There was an error of law. In re Sobol, 2 Cir., 242 F. 487, 489.

The motion to dismiss this appeal on which decision was reserved pending consideration of the appeal on its merits is denied. Order number 260 of the District Court which is the subject of this appeal is reversed and the case is remanded to the District Court for further proceedings in accordance with this opinion.

GOODRICH, Circuit Judge (dissenting).

With the impact of the New Jersey decision of Wilentz v. Hendrickson, 1944, 135 N.J.Eq. 244, 38 A.2d 199 upon the other possible questions which may be presented either in federal or state court, we are not at this time concerned. So much of the majority opinion under division II as discusses these matters seems to me uncalled for at this time. There is no occasion at this point to agree or disagree with certain legal propositions there stated.

There seems to be no difference between the majority and minority on the question of the general power and duty of a federal court to decide questions presented to it whether they be hard or easy. We are not

---

[9] "Section 225. (Judicial Code, section 128, amended.) Appellate jurisdiction—

\* \* \* \* \*

"(c) Appellate and supervisory jurisdiction in bankruptcy proceedings. The circuit courts of appeals shall also have an appellate and supervisory jurisdiction under sections 47 and 48 of Title 11, over all proceedings, controversies, and cases had or brought in the district courts under Title 11, relating to bankruptcy, or any of its amendments, \* \* \*."

"Section 47. Jurisdiction of appellate courts

"a. The Circuit Courts of Appeals of the United States \* \* \* are hereby invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact; \* \* \*."

confronted here with the problem of reference to the state court to decide whether a statute is to be construed so as to bring it in conflict with federal constitutional provisions as in Spector Motor Service, Inc., v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 and that group of cases. We all agree that the general responsibility of the federal court is that stated in Meredith v. Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

It seems to me that the sole question in the case before us is whether the Reorganization Court committed reversible error in declining to order the debtor and trustees to become parties to litigation in the New Jersey State Courts involving questions of whether, following the declaration of the unconstitutionality of the Settlement Acts, the petitioner has rights growing out of conduct, or agreement, or what not, prior to that declaration.

There is argument to be made either way on this point and the Supreme Court in the Gardner case quoted in the majority opinion, recognized the possibility that the choice might be for one tribunal or the other. If the matter is one of discretion, that discretion is lodged in the District Court and not ourselves. We should uphold the action there taken unless we find that the exercise of discretion is not legally supportable.

The majority finds the question shifting from one of discretion to one of law because of outstanding injunctions issued by New Jersey State Courts by which New Jersey tax officials are forbidden to accept payment of taxes under certain conditions. The conclusion from the fact that such injunctions have been issued seems to be that the Bankruptcy Court is somehow deprived of authority which it otherwise has. That proposition, it is submitted, is not well taken. State courts may enjoin state officials, generally speaking, in any way they please. And it is certainly true, since Erie Railroad v. Tompkins, that findings of state law by federal courts do not bind state courts subsequently in proceedings between different parties. But it is a far cry from these perfectly acceptable propositions to conclude that a state court, by issuing an injunction against a state official, can affect in any way the operation of a federal court sitting in bankruptcy and exercising a power given by the Constitution of the United States. A state court can stop a state officer from taking money, if it wants to, but it cannot interfere with the effect of a discharge given in bankruptcy proceedings by a federal court. It is interesting in this respect to take a look at the express language of the provision in the United States statute as to the effect of a confirmation of a plan in reorganization proceedings as set out in 11 U.S.C.A. § 207(g): " * * * the order of confirmation shall be binding upon (1) the debtor, (2) all · stockholders * * * and (3) all creditors * * * whether or not their claims shall have been filed * * * including creditors who have not, as well as those who have, accepted it." It needs no argument to establish the point that a statute passed by the Congress pursuant to a power granted it by the Constitution becomes the supreme law of the land. The effective operation of this power is surely not to be interfered with by orders made in the intra-state operation by state governments in whatever functions they may be at the time performing.

I disagree with the majority, therefore, on two grounds. The first is on the question of exercise of discretion by the District Judge. I think his discretion was properly exercised. He was sitting in bankruptcy. Questions of state law arise in bankruptcy all the time and it is part of the federal judge's ordinary function to deal with them in his stride as and when they arise.[1] It does not seem to me that we have here

---

[1] A review of the last five volumes of the Federal Reporter, Second Series, 155 to 159, inclusive, sustains this statement:

Master Lubricants Co. v. Cook et al., 9 Cir., 1947, 159 F.2d 679 (California homestead laws used to ascertain exemption privileges.); Town of Agawam v. Connors, 1 Cir., 1947, 159 F.2d 360 (Right of redemption of trustee measured by state law.); In re V-I-D, Inc., 7 Cir., 1947, 158 F.2d 964 (Indiana law

the kind of question of state law which the delicate operation of our federal system requires to be referred to a state court. This, like all matters of discretion, is not demonstrable by any litmus paper test and I can quite see good argument the other way, although to me it is unconvincing.

The second reason for the dissent is be-

cause I think the majority announces a very dangerous doctrine. It is inconceivable to me that the exercise of federal function by the court acting under a statute in turn resting on a Constitutional grant of power, can be interfered with by the fact that a state court has previously enjoined somebody from doing something

---

regarding effect of judgment rendered without jurisdiction over subject matter or person used to exclude realty from debtor's assets.); Rudnick et al. v. Fishbeck, 2 Cir., 1946, 158 F.2d 940 (New York law of assignments applied to a claim filed against bankrupt.); New York, O. & W. Ry. Co. v. People of State of New York et al., 2 Cir., 1947, 158 F.2d 769 (Court considered relationship of two New York statutes and duty of state officers thereunder for pledged funds of railroad.); United States v. Heffron et al., 9 Cir., 1947, 158 F.2d 657 (California homestead and exemption laws examined for effect upon federal tax liens in bankruptcy); In re Lorraine Castle Apartments Bldg. Corp., Inc., 7 Cir., 1946, 158 F.2d 44, at page 45 the Court stated: "The rate of interest after maturity upon real estate obligations which make no express provision as to it is fixed by the laws of the state where the property is located. * * *"; Walker et al. v. Leach et al., 10 Cir., 1946, 158 F.2d 15 (Attachment of bankrupt's furniture by a Colorado justice court ruled void for lack of jurisdiction of that court under Colorado law.); In re Rosen, 3 Cir., 1945, 157 F. 2d 997, at page 998: " * * * The rule is, therefore, clear to this extent, that we determine the efficacy of the transfer against the trustee under Section 60, sub. a [11 U.S.C.A. § 96, sub. a], by the

applicable state law."; Wohlschlaeger et al. v. Duncan, 8 Cir., 1946, 157 F.2d 933 (Missouri law of assignments applied to ascertain whether debtor committed an act of bankruptcy.); Martin v. Companaro et al., 2 Cir., 1946, 156 F. 2d 127 (New York contract law applied to determine whether claimants' claims arose out of contract or a quantum meruit theory.); In re Chicago, R. I. & P. Ry. Co., 7 Cir., 1946, 155 F.2d 889, at page 893, the Court stated: "We believe, however, that federal decisions are of no binding effect here, but rather that, under the doctrine of Erie R. Co. v. Tompkins, * * * where the bankruptcy court is charged with the duty of protecting a lien unaffected by bankruptcy, the law of the state of performance must control. Of course the bankruptcy court determines all questions arising under the bankruptcy statute in accord with federal decisions, but when it deals with the right of a citizen to enforce a lien under the state law, unaffected by bankruptcy, or interprets the rights of the mortgagee, it must grant relief demanded by the laws of the state. * * *"; Rountree v. Lane et al., 4 Cir., 1946, 155 F.2d 471, at page 472: "The question at issue is whether the provisions of § 7 of Article VI of the will created a spendthrift trust under the permissive terms of § 5157 of the Code of Virginia * * *."